LEWIS E. WATERMAN et al., Appellants, *v.* EDWARD L. SHIP-
MAN et al., Respondents.

An issue as to the existence of a license to use or manufacture a patented
article is simply one as to the existence of a contract; it involves a ques-
tion of title to property, as the exclusive privilege created by the issuing
of a patent is property.

An action, therefore, to determine whether a license has been given does
not arise "under the patent laws of the United States," and is not within
the jurisdiction of the federal courts, when all the parties are citizens of
the same state; but is cognizable in a state court.

Where a manufacturer has invented a new name and applied it to an article
manufactured by him to distinguish it from those manufactured and
sold by others, and the name thus adopted is not generic or descriptive
of the article, its qualities, ingredients, grade or characteristics, but is
arbitrary or fanciful, he is entitled to be protected in the exclusive use
of the name as a trade-mark.

The use of the name by another manufacturer tends to deceive purchasers,
and even if he had no actual intent to deceive, the courts are authorized
to interfere, both to protect the private right of the manufacturer who
invented it and the public interests.

The fact that a name so adopted indicates not only that the article is made
by the manufacturer, but is an article patented by him, does not affect
his exclusive right to use it as a trade-mark.

In an action to restrain defendants from using the name "Waterman's
Ideal Fountain Pen," which plaintiffs claimed as a trade-mark, the trial
court fund that plaintiff Waterman had, for a long time previous to the
commencement of the action, been the manufacturer and inventor of an
article known as a fountain pen, which was stamped and labeled with
the name specified ; this had been adopted by him as "his own proper
device and trade-mark, and was known to the public and to buyers and
consumers." It appeared also that the pens manufactured by plaintiffs
were made under letters patent issued to Waterman, which described
the invention as a "fountain pen." Defendants manufactured pen-
holders, stamped them with the same name and offered them for sale.
Both Waterman and defendants stamped upon the articles so made and
sold by them the dates of the patents issued to Waterman. *Held*, the
word "Ideal," as used by Waterman, pointed out simply the maker,
and so came within the definition of a trade-mark; that while the whole
name pointed out both maker and inventor, this did not affect the right
to the exclusive use of that word, and that plaintiffs were entitled to
be protected in such use as applied to fountain pens.

It appeared that W. assigned his letters patent; that S., the assignee, granted to him an exclusive license to manufacture and sell fountain penholders under said patents, the license requiring him to make returns and to pay royalties, as specified, to S., and upon failure to do this within a time specified, S. was authorized to terminate the license upon giving written notice to the licensee. Subsequently W. and S. gave to defendants their joint promissory note, and to secure payment thereof S. assigned to them the letters patent, subject, however, to the license granted to W. Defendants transferred the note and their interest in the patents to S. The note was not paid at maturity, and thereafter S. served notice of a revocation of the license on the ground of failure on the part of the licensee to make returns and payments as prescribed, and then executed to defendants a sole and exclusive license to manufacture and sell fountain pens under the patents. The note was subsequently paid; between its maturity and payment defendants manufactured and sold penholders under the patents similar to and in imitation of those made by W., and stamped "Waterman's Ideal Fountain Pen." After the note was paid, they ceased to manufacture, but continued to sell pens then on hand. It did not appear that plaintiffs manufactured anything covered by the patents during the period for which they made no returns. *Held,* that there was no effective revocation of W.'s license; that the one granted to defendants conferred upon them no right either to make or sell, and so no right to use the name; that while the relief plaintiffs might be entitled to on account of such manufacture by defendants was not involved in the action, as it related not to the use of the invention, but of the trade-mark, they were entitled to an injunction to restrain defendants from using the latter.

(Argued October 29, 1891; decided December 8, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 13, 1889, which affirmed a judgment in favor of defendants entered upon a decision of the court on trial at Special Term.

This action was brought to restrain the defendants from using an alleged trade-mark of the plaintiffs, consisting of the name "Waterman's Ideal Fountain Pen," and to compel them to account for all profits realized by them from the sale of fountain pens stamped with that name.

The answer, after denying certain allegations of the complaint, alleged that the name in question denoted a certain kind of fountain pen patented in the name of the plaintiff

Waterman, and that it was the only name under which such patented pens were known or sold in the market; that it had no reference to the particular manufacturer of the pens, and that the defendants had never manufactured or sold, except as lawful licensees under said patent.

Upon the trial it appeared that on February 12, 1884, and also on November 4, 1884, letters patent of the United States were issued to Lewis E. Waterman, one of the plaintiffs, for an invention described " as a new and useful improvement in Fountain Pens." The application for the earlier issue of said patents was filed September 19, 1883, and for the later, June 20, 1883, and in July of the same year, said Waterman adopted the name " Waterman's Ideal Fountain Pen " for the fountain pens made under said patents, which were " substantially alike with only slight differences." The specifications describe the invention as a " fountain pen," without using either of the other words. After the patents were issued, Mr. Waterman made and sold a large number of said fountain pens, each conspicuously stamped with said name, and by that name, on account of his experience and skill, as well as the good quality of the pen, it had become widely known in the community, and had acquired a high reputation as a valuable and useful article. It commanded an extensive sale and was the source of great profit to the proprietor. Waterman subsequently assigned the letters patent to Sarah E. Waterman. The plaintiff corporation has acquired from the patentee an interest in the sale of such pens, and both of the plaintiffs have applied said name only to fountain pens so made, which are known to the trade and the public exclusively by that name.

From March 22 to November 25, 1884, the " Ideal Pen Company," a firm composed of said Waterman and the defendants, owned the right to manufacture and sell fountain pens under the patents, and with the consent of Mr. Waterman, held itself out to the public as the sole licensee and manufacturer thereof. At the latter date, the firm was dissolved by mutual consent, Waterman taking the assets, except the bills receivable which passed to the defendants, who assumed all

the debts and obligations.   As a further consideration for the
adjustment, said Waterman, with said Sarah E. Waterman,
gave to the defendants their joint promissory note for $6,500,
payable November 28, 1887, with annual interest, and to
secure the payment of the same, said Sarah E., who was then
the owner of the letters patent, assigned them to the defend-
ants, subject, however, to an exclusive license previously
granted by her to said Lewis E. to manufacture and sell fountain
penholders under said patents.   The license required said
Lewis E. to make returns to said Sarah E., on the first of each
month, of all fountain penholders " containing the said patented
improvement manufactured by him," during the month preced-
ing and on or before the fifth day of the month following to pay
her the sum of twenty-five cents as a license fee on every fountain
penholder so manufactured.   Upon a failure to make returns
after thirty days, or to make payments after ninety days from
the times when returns or payments respectively became due,
it was provided that said Sarah E. might terminate the license
by giving written notice to the licensee.   The defendants
transferred said note and such interest as they had in the pat-
ents to one Asa L. Shipman, who on the 12th of December,
1887, after the note had become due and while it was unpaid,
attempted to give them a sole and exclusive license to manu-
facture and sell fountain pens under said patents.   January
10, 1888, he assumed to revoke the license to Lewis E. Water-
man, apparently for the reason that the latter continued to
sell fountain pens under the letters patent, and on April 26,
1888, he served a second notice of revocation on the ground
of a failure to make returns due on the 1st of January and
February, 1888, and payments due on the 5th of December,
1887, and January, 1888.   After judgment had been recovered
on said note, supplementary proceedings instituted, and a
receiver appointed, and on May 16, 1888, the judgment and
all costs were paid.   Between the maturity of the note and
the date of its payment, the defendants engaged in the manu-
facture of penholders under said patents, in imitation of and
similar to those so made by said Lewis E. Waterman, and after

causing them to be stamped "Waterman's Ideal Fountain Pen," offered them for sale. When the judgment was paid, they ceased to manufacture, but continued to sell such as they had on hand, all of which had been made between the dates aforesaid. Both Waterman and the defendants stamped the pens made and sold by them with the dates of the patents under the name of the pen.

After finding substantially the foregoing facts, the trial court found as a conclusion of law that the name in question, being applied to a patented article, is not a trade-mark showing the origin and manufacture of the patented article; that whoever has the right to manufacture under the patents, has the right to affix said name to the pens so made; that the defendants, while manufacturing and selling, claimed the right so to do by virtue of a license from the owner of the patents, and the complaint was dismissed because it was held that the only remedy of the plaintiff was by a suit for infringement, of which the federal courts alone have jurisdiction, or by a direct action to compel a reassignment of the patents, and as incidental thereto an accounting for the profits.

Further facts are stated in the opinion.

*Walter S. Logan* for appellants. The fact that the article to which the trade-mark is applied is in some of its features also covered by patents, does not deprive the plaintiffs of the protection of their trade-mark. (*Silchow* v. *Baker*, 93 N. Y. 67; *McLean* v. *Fleming*, 96 U. S. 252; *Holmes* v. *H. B. M. Co.*, 37 Conn. 278; *Newby* v. *O. C. R. R. Co.*, Deady, 609; *Lee* v. *Haley*, L. R. [5 App. Cas.] 155; *B. W. L. Co.* v. *Nasury*, 25 Barb. 416; *C. Co.* v. *Ames*, 17 Fed. Rep. 561; *Gray* v. *T. S. P. Works*, 16 id. 436.) The fact that the defendants claimed the right to manufacture and sell pens under Mr. Waterman's patents, does not deprive this court of jurisdiction to try and determine the question whether such claim was or was not well founded, requires this court to dismiss the complaint and render judgment for the defendant without reference to the validity of the defendants' claims in

this regard. (*Morston* v. *Smith*, 82 N. Y. 526; *Eddleston* v. *Vick*, 23 Eng. L. & Eq. 51; *Selchow* v. *Baker*, 93 N. Y. 67; *Swift* v. *Dey*, 4 Robt. 614; *C. M. Co.* v. *C. M. Co.*, 32 Fed. Rep. 94; *D. C. Co.* v. *Gugenheine*, 2 Brewster, 337; *C. S. Co.* v. *H. R. S. Co.*, 45 N. Y. 291.)

*Antonio Knauth* for respondents. The name of "Waterman's Ideal Fountain Pen" is not a trade-mark, being the name of a patented article, and the only name by which said article is known to the public. Whoever has the right to manufacture fountain pens under the patents in question, has the right to designate the articles made under said patents by the name under which they are known. (*L. M. Co.* v. *Nairn*, 7 L. R. [Ch. Div.] ——; *Fairbanks* v. *Jacobus*, 14 Blatch. 337; *S. S. M. Co.* v. *Stanage*, 6 Fed. Rep. 279; *S. M. Co.* v. *Riley*, 11 id. 706; *W. & G. S. M. Co.* v. *Frame*, 17 id. 623; *Selchow* v. *Baker*, 93 N. Y. 66.) If the plaintiffs' contention, to the effect that defendants had no right to use the patents during the time when they manufactured the fountain pens, is correct, the action is in substance an action for infringement of United States letters patent, and this a state court has no jurisdiction to prevent. (*C. S. S. Co.* v. *Clark*, 100 N. Y. 365.) The mortgage assignment of the patents in question given to Asa L. Shipman conveyed a legal title of the patents to Asa L. Shipman, which title was liable to be defeated. Until such payment, Asa L. Shipman was the legal owner of the patents, and when the note was not paid on the day of its maturity, the assignment of the patents vested an absolute title in Asa L. Shipman. (*West* v. *Crary*, 47 N. Y. 423.) Asa L. Shipman, as mortgagee of the patents, and, after default in payment, as absolute owner of the same, was entitled to returns from Waterman under the license agreement, and to the royalties which Waterman had agreed to pay thereunder. (*Waterman* v. *MacKenzie*, 138 U. S. 260, 261.) Waterman was in default when the license was revoked. (*Case* v. *Brown*, 1 Biss. 382; *Bell* v. *Daniels*, 1 Bond, 212; *Bridge* v. *Brown*, 1 Holmes, 205; *Dunbar* v. *Myers*, 94 U. S. 187.)

VANN, J.   The defendants rest their right to the use of the name in question upon the allegation that they have a license under the letters patent to make and sell the patented article, and that the right to make the article involves the right to use the name adopted by the patentee.   The plaintiffs insist that no effective license was ever granted to the defendants, who in reply say that they claim to have acted under a valid license, and that the assertion of this claim divests the state courts of jurisdiction.   We think, however, that an issue as to the existence of a license is an issue as to the existence of a certain kind of contract, and involves simply a question of title to property, which does not fall within the jurisdiction of the federal courts, when all the parties are citizens of the same state.   The United States government, by virtue of its laws and the procedure of its patent office, created a certain exclusive privilege, popularly known as a patent right, and granted it to Lewis E. Waterman.   That exclusive privilege is property, not visibly existent, but actually existing, and the official evidence thereof appears in letters patent issued by the Federal Government to said Waterman as patentee.   That property, like other property, is capable of transfer by assignment.   The statute which created it expressly gave it the quality of assignability, either as a whole "or any interest therein."   (U. S. R. S. § 4898.)

The assignment of a certain interest has become known as a license, which is a transfer *pro tanto* of the property represented by the letters patent.   An action, therefore, to determine whether a license has been given, is an action to determine the title to property, and while it involves the existence of a contract relating to a patent right, simply as property, it does not arise " under the patent laws of the United States," as interpreted by its courts.   (*Hartell* v. *Tilghman*, 99 U. S. 547 ; *Albright* v. *Teas*, 106 id. 613 ; *Dale Tile Mfg. Co.* v. *Hyatt*, 125 id. 46 ; *Ingalls* v. *Tice*, 14 Fed. Rep. 352 ; *McCarty & Hall Trading Co.* v. *Glaenzer*, 30 id. 387 ; *Merserole* v. *Union Paper Collar Co.*, 6 Blatch. 356.)

The same rule has been repeatedly recognized by this court,

which has held it applicable even when the action involved the validity of a patent. (*Hyatt* v. *Ingalls*, 124 N. Y. 93; *Middlebrook* v. *Broadbent*, 47 id. 443; *Continental Store Service Co.* v. *Clark*, 100 id. 365; *Marston* v. *Swett*, 82 id. 526.)

An infringement, as applied to patents, is a violation of the exclusive right conferred upon the patentee. An adjudication that a certain act is an infringement necessarily requires the construction of the right and, by comparison of principles or processes, a determination as to its nature and extent. An action to prevent an alleged infringer from using the right, as patented, involves the existence or preservation of the monopoly granted by the patent and necessarily arises under the patent laws. Jurisdiction of such actions has been conferred upon the federal courts, and it is held to be exclusive. (*St. Paul Plough Works* v. *Starling*, 127 U. S. 376; *Hyatt* v. *Ingalls*, *supra*; *Hat Sweat Mfg. Co.* v. *Reinoehl*, 102 N. Y. 167; *Smith* v. *Standard Laundry Machinery Co.*, 19 Fed. Rep. 825.) Clearly no question as to infringement arises in this case, because both parties recognize the existence, validity and use of the patents, but differ as to the ownership of certain rights thereunder, which will now be considered.

The instrument relied upon by the defendants as a license is dated December 12, 1887, and purports to be a grant to them from their assignee, under a writing of an earlier date, of "the sole and exclusive right and license to manufacture, use and sell the several inventions described in said two letters patent throughout the United States." The power to make this grant depended upon the assignment from Sarah E. Waterman to the defendants dated November 25, 1884, which was in the nature of a mortgage, and was to be "null and void" upon payment of the note that it was given to secure. (U. S. R. S. § 4898; *Waterman* v. *Mackenzie*, 138 U. S. 252.) That assignment, however, was made subject in express terms to the license agreement dated November 20, 1884, from Sarah E. to Lewis E. Waterman, whereby she granted to him "the sole and exclusive right and license to

manufacture and sell fountain penholders containing the said patented improvement throughout the United States." While these instruments were in force, it is clear that the only person who had a right to make or sell articles protected by the patents was Lewis E. Waterman, as his grant was prior in date and exclusive in scope. The defendants acquired by the original grant to them of November 25, 1884, simply the right to returns and royalties, with the remedy for default in making either, as provided in the instrument dated November 20, 1884, and they acquired no greater right from their assignee on December 12, 1887. The grant to the defendants of the right to make and sell in certain territory, subject to the grant to Lewis E. Waterman of a prior and exclusive right to make and sell throughout the same territory, conferred upon them no right either to make or sell, as their grantor could not transfer to them what had been previously transferred, with their knowledge, to another. Even if the grant to the defendants, although not operative as a license, transferred to them such rights as their grantor possessed at the time, which it did not purport to do, still the defendants would be without the protection afforded by a license, because the trial judge did not find and there is no evidence authorizing him to find, an effective revocation of the exclusive license to Lewis E. Waterman. The evidence relied on to establish such a manufacturing of penholders as to require the making of returns and the payment of royalties, consisted of testimony showing that Mr. Waterman put unpatented pens into patented penholders, that he had made and had on hand before the note became due, and prior to that time it is not seriously claimed that there was any obligation to make returns. This was not a manufacturing of penholders, but simply an adjustment to suit the tastes of customers, as no particular kind of pen was to be used with the penholder. If one buys a penholder and pen, he can change the pen without the imputation of manufacturing. The specifications of each patent refer to "the ordinary writing pen" and contemplate its use with the article invented. Mr. Waterman "manufactured" no fountain pens, within the

proper meaning of that word as used in his license, prior to February 1, 1888, and after that date his returns were regularly made and before any payments became due, the loan was paid and there was no further obligation to make either returns, or payments to the defendants, or their assignor. The attempts to revoke the license, therefore, were without effect. This conclusion makes it unnecessary to consider the effect of receiving payment in full of the loan upon licenses, or rights previously granted under the mortgage assignment. ( *West* v. *Crary*, 47 N. Y. 423 ; *Waterman* v. *MacKenzie, supra.*)

Mr. Waterman's exclusive license was therefore in full force when the defendants made the fountain pens in question and stamped them with the name " Waterman's Ideal Fountain Pen." The existence of the letters patent furnished them no protection in thus using the name, because, as already appears, they had no right to manufacture or sell the patented article. The relief that the plaintiffs may be entitled to in the proper forum, on account of the making of fountain pens by the defendants, is not involved in this action, which relates not to the use of the invention but to the use of the name.

If our reasoning thus far is sound, but little difficulty remains in the way of pronouncing judgment in this appeal. With the patents eliminated from the case, as immaterial facts, it stands on the theory of the complaint, which makes no allusion to them. Thus we have a case where, in the language of this court in *Selchow* v. *Baker* (93 N. Y. 59, 69), " a manufacturer has invented a new name, consisting  *  *  *  of a word  *  *  *  in common use, which he has applied for the first time to his own manufacture, or to an article manufactured for him, to distinguish it from those manufactured and sold by others, and the name thus adopted is not generic or descriptive of the article, its qualities, ingredients or characteristics, but is arbitrary or fanciful and is not used merely to denote grade or quality."

While the word " fountain," as applied to pens of a certain kind is a common appellative, the word " ideal," as applied to fountain pens, is non-descriptive, arbitrary and fanciful and

has no natural nor necessary application to a pen. It serves to indicate that the article sold by Waterman was of his own manufacture. The right to so use it was in the nature of property and had become valuable. The use of it by the defendants tended to deceive purchasers by inducing them to believe that the pens sold by them were made by one who had established the reputation of his wares by the superiority of his workmanship and the excellence of his materials. The result, being injurious to the public as well as to the plaintiffs, authorized a court of equity to interpose its preventive remedy for the protection of both the private right and the public interest by restraining the defendants from passing off wares of their own manufacture as those made by another. The ground of interference by the court is the false representation by the defendants through their acts in stamping the pens made by them with a word that has obtained currency as indicating pens made by Waterman. Even if, in so doing, they did not intend to defraud, as the necessary tendency of their acts was to deceive the public, the court was authorized to interfere. (*Newman* v. *Alvord*, 51 N. Y. 189; *Canal Co.* v. *Clark*, 13 Wall. 311; *Singer Mfg. Co.* v. *Wilson*, 24 Week. Rep. 1023; *Sykes* v. *Sykes*, 3 B. & Cr. 541; *Millington* v. *Fox*, 3 My. & Cr. 338; *Celluloid Mfg. Co.* v. *Cellonite Mfg. Co.*, 32 Fed. Rep. 94; *Singer Mfg. Co.* v. *Larsen*, 8 Biss. 151.)

In the case last cited, a patentee had established the name of the "Singer Sewing Machine." It was held that, although, after the expiration of the patent, the defendant could make that machine and call it by that name, still he could not "do any act, the necessary effect of which would be to intimate, or to make anyone believe that the machine which he constructs and sells, is manufactured by the plaintiff."

The function of a trade-mark is to point out the maker of the article to which it is attached. It individualizes the particular make of one who adopted the name for that purpose and with that effect. The defendants claim that the use by them of the name in question did not point out the maker, but the inventor, but we think it indicated both. "Waterman's Foun-

tain Pen," with the date of the patent following, pointed out the inventor, while the insertion of the word "Ideal," together with the use made of it, pointed out the maker. The learned trial court found that Waterman, for a long time prior to the commencement of this action "had been the manufacturer and vendor of an article known as a fountain pen, which he had for many years * * * offered for sale, and sold, stamped and labeled with his own proper device and trade-mark, adopted by the plaintiff for that purpose in the year 1884, as follows: 'Waterman's Ideal Fountain Pen.'" Also that "it is known as such article to the public and to the buyers and consumers thereof" by that name "and by the plaintiff's own proper device and trade-mark aforesaid." As the name was also used to indicate the patented article, it performed the double function of identifying not only fountain pens as made by Mr. Waterman, but also as patented by him. Can this fact take anything from his rights, or add anything to those of the defendants? Cannot a patentee adopt the same name to designate his workmanship, as well as his invention? Assuming that, upon the expiration of the patent, anyone may use the name, until that time arrives why should the inventor be deprived of a right, which without question would be his if he had not taken out a patent for his invention?

We think that the word "Ideal," as applied by Mr. Waterman to fountain pens of his own manufacture, comes within the comprehensive definition of a trade-mark as given in *Selchow* v. *Baker* (*supra*), and that the plaintiffs, as the owners of the name, are entitled to the protection which the law affords to owners of trade-marks, notwithstanding the fact that the name is also used to designate the invention. Upon the facts found, the plaintiffs were entitled to an injunction restraining the defendants from using the word "Ideal" as applied to fountain pens.

The judgment should, therefore, be reversed and a new trial granted, with costs to abide the final award of costs.

All concur, except BRADLEY, J., not voting.

Judgment reversed.