HUGHES et al. v. ALFRED H. SMITH CO.

ALFRED H. SMITH CO. v. HUGHES et al.

(District Court, S. D. New York. April 9, 1913.)

1. TRADE-MARKS AND TRADE-NAMES (§ 3*)—NAMES SUBJECTS OF APPROPRIATION—DESCRIPTIVE WORDS.

The word "Ideal," as applied to a hair brush, is not descriptive, in such sense as to preclude its use as a trade-mark.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 4–7; Dec. Dig. § 3.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 25*)—PERSONS WHO MAY ACQUIRE—MERCHANT.

A merchant, having the exclusive right to sell in the United States a patented article made by the patentee in a foreign country, may adopt a trade-mark for such article, not used by the manufacturer, for the protection of his own business, and is entitled to protection in its use in this country after the expiration of the patent as against the patentee.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 28; Dec. Dig. § 25.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 43*)—INFRINGEMENT—OWNERSHIP—RIGHT OF REGISTRATION.

Complainant and his predecessors in business for many years, under a contract giving them the exclusive American rights, sold a hair brush made in England and patented by the manufacturers both in that country and in the United States. Complainant's predecessors selected the name "Ideal" as a trade-mark for a particular grade of such brushes, and had the brushes of that grade made for them so marked at the factory, although the same brush was sold in England under another name. They also sold other brushes covered by the patent of different grades under other names. They at no time acted as agents for the makers, but bought their brushes outright. After the United States patent .expired in 1903, complainant made a contract with the makers giving him the exclusive right to sell their brushes in this country for a term of years, which contract expressly recognized his ownership of the trade-mark "Ideal," by providing.that in the event of his death before the expiration of the contract it should become the property of the manufacturers. Such contract was afterward abrogated by mutual consent; the manufacturers reserving the right to sell their brushes in the United States

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

under another name. In 1905 complainant registered his trade-mark of "Ideal"; his application showing that it had been in actual and exclusive use by him for more than 10 years. *Held*, that as it had never been used to identify the patented article as such, but the origin of sale by complainant and his predecessors, it was the property of complainant, and not of the patentees, and that under Trade-Mark Act Feb. 20, 1905, c. 592, § 5, 33 Stat. 725 (U. S. Comp. St. Supp. 1911, p. 1462), which provides that "nothing herein shall prevent the registration of any mark * * * which was in actual and exclusive use as a trade-mark of the applicant or his predecessors from whom he derived title for ten years next preceding" the passage of the act, it was entitled to registration and to protection by injunction from infringement by the English patentees or their agents in the United States.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 48–49; Dec. Dig. § 43.*]

In Equity. Suit by Henry L. Hughes and Henry L. Hughes, a corporation, against the Alfred H. Smith Company, with a cross-bill. Cross-bill dismissed, and decree for complainants.

The suit was to restrain alleged infringement of complainant's registered trade-mark "Ideal," applied to hair brushes, and for an accounting.

Horwitz & Rosenstein, of New York City (Frank C. Curtis, of Troy, N. Y., of counsel), for Henry L. Hughes and Henry L. Hughes, a corporation.

James L. Steuart, of New York City (Sidney R. Perry and Francis X. Brosnan, of counsel), for the Alfred H. Smith Co.

RAY, District Judge. On the 26th day of June, 1906, on application filed by Henry L. Hughes June 26, 1905, the trade-mark "Ideal" was registered; proprietor, Henry L. Hughes, No. 54,282. The statement, declaration, and trade-mark filed and registered are as follows:

"United States Patent Office.

"Henry L. Hughes, of Chicago, Illinois.

"Trade-Mark for Hair Brushes.

"No. 54,282. Statement and Declaration.

"Registered June 26, 1906.

"Application Filed June 26, 1905. Serial No. 9,048.

"Statement.

"To All Whom It may Concern:

"Be it known that I, Henry L. Hughes, a citizen of the United States, residing at Chicago, in the county of Cook, and state of Illinois, and doing business at No. 78 Monroe street, in said city, have adopted for my use a trade-mark, of which the following is a description:

"The trade-mark is shown in the accompanying drawing, wherein appears the word 'Ideal.'

"This trade-mark has been continuously used in my business since December 21, 1886.

"The class of merchandise to which this trade-mark is appropriated is brushes, and the particular description of goods comprising said class upon which I use said trade-mark is hair brushes.

"This trade-mark is usually displayed upon the handle of the brushes and

upon packages containing the goods by placing thereon a printed label on which the same is shown.                                   Henry L. Hughes.

"Witnesses:
        "John M. Gallagher.
        "Maurice Archer."

                        "Declaration.

"State of Illinois, County of Cook—ss.:

"Henry L. Hughes, being duly sworn, deposes and says: That he is the applicant named in the foregoing statement; that he believes the foregoing statement is true; that he believes himself to be the owner of the trade-mark sought to be registered; that no other person, firm, corporation, or association, to the best of his knowledge and belief, has the right to use said trade-mark, either in the identical form, or in any such near resemblance thereto as might be calculated to deceive; that said trade-mark is used by him in commerce among the several states of the United States, and particularly between Illinois and Indiana, Illinois and Ohio, and between the United States and foreign nations, or Indian tribes, and particularly between the United States and England, and that the description, drawing, and specimens presented truly represent the trade-mark sought to be registered.

                                        "Henry L. Hughes.

"Sworn to and subscribed before me, a notary public, this 3d day of April, 1905.
        "[L. S.]                                    John M. Gallagher.

                        "Trade-Mark.
"No. 54,282.                                    Registered June 26, 1906.
                "Henry L. Hughes,
                "Hair Brushes.
"Application filed June 26, 1905.
                        "(Ideal.)
"Witness:                                        Proprietor:
        "J. M. Fowler, Jr.                            Henry L. Hughes,
        "W. A. Johnston.                    By Owen H. Fowler, Attorney."

In 1885, Mason Pearson, James Raper, and Frederick Gill invented and in England obtained a patent for a single bristle rubber cushion brush, and July 14, 1886, they applied for a patent thereon in the United States which was issued December 21, 1886. The distinctive features of this patented hair brush were the elastic domed or arched pad or sheet of elastic material supporting bristles "arranged each separately isolated," and which bristles were secured therein by cement and a backing sheet, and which domed elastic pad or sheet carrying the bristles was held to the wooden or metal back of the brush by an undercut groove around and near the inner edge of the back, so as to form an air space between the back and such elastic pad or sheet carrying the bristles. By pressure on the bristles the air would be forced out of such air space through a passage.

Pearson at once commenced manufacturing and selling the brush in England under the name "Very." In 1885, one Samuel Reid, a resident and citizen of the United States, visited England and remained until December 17, 1887. While there he became acquainted and quite intimate and friendly with Pearson. Just prior to leaving Reid was shown two of these brushes, made under the patent and bearing the mark "Very Brush" and also the words "London Patent."

Pearson requested Reid to take them to the United States and see if he could interest any one in them, and, if so, he would sell the patent, or else grant a license, so the brushes could be made in England and handled or sold in the United States. Reid took the brushes with him to Chicago, Ill., where he arrived January 10 or 12, 1888, and soon after he exhibited the brushes to some of his acquaintances, the Shorediche and Hurd families. Hurd and Shorediche took an interest and concluded to handle the brush, if Reid could make satisfactory arrangements with the patentees, Raper, Pearson, and Gill. In May, 1888, at a meeting in Chicago, Hurd suggested and it was agreed to use the name "Ideal" on and in connection with the brush in case they made arrangements to handle it. Up to that time the name "Ideal" had not been used in any manner in connection with that brush. There is some claim and contention on the part of the defendant that the name "Ideal" had been used on these brushes prior to this time, and by Raper, Pearson, and Gill; but this contention is not supported by the evidence.

Reid communicated with the patentees and ascertained the terms on which the brushes could be purchased for sale in the United States. Reid, Shorediche, and Hurd thereupon had a die made in Chicago for stamping the brushes sold and shipped them for sale in the United States "Ideal." Reid, Shorediche, and Hurd had labels printed to put on the cardboard boxes containing the brushes when put on sale here, which labels bore a cut of the brush and the word "Ideal." All brushes were purchased of Raper, Pearson, and Gill absolutely and outright. There was no agency. In making in England the brushes to be sent Reid, pursuant to the understanding of the parties, the manufacturers stamped them: "The Ideal Brush, London, Patented." This was the die, or identical with the die, designed and made in Chicago. In 1888, and early 1889, Reid, Hurd, and Shorediche did business and sold these brushes under the firm name "Anglo-American Novelty Company." The firm advertised these brushes as "Ideal" and had cuts made, etc. In 1889, Reid bought out his associates, and later took in one Drinkwater, who soon went out, leaving Reid alone; but in 1893, he was joined in business with Henry L. Hughes. On or about May 1, 1889, and after Hurd and Shorediche had withdrawn, Reid received a license agreement from Pearson and Gill, then owners, granting to Reid an exclusive transferable license to sell throughout the United States hair and other brushes made by Pearson and Gill under United States letters patent No. 354,583.

In 1892, it came to the notice of Reid that one Gibson had had shipped to him, Gibson, some of these patented hair brushes and was selling them, and also that his (Reid's) selling agent was meeting in the market these patented brushes sold under the name "Perfect Penetrator" and "The Very Brush." Thereupon Reid caused to be printed and circulated a notice of his rights and warning all persons against infringing them. From October 13, 1893, Reid and Henry L. Hughes did business in the selling of "Ideal" brushes only under the name "The Ideal Hair Brush Company." Later Reid sold his interest to his brother, James M. Reid. In 1894, Hughes bought out the inter-

205 F.—20

est of James M. Reid and conducted the business alone down to February, 1911, as "The Ideal Hair Brush, H. L. Hughes." He sold this grade of brushes under the name "Ideal" only. He had a cheaper grade sold as "Hughes Brush," and also a military brush made under the said patent, but not bearing the name "Ideal." The brushes were all purchased of Pearson and Gill. Similar brushes came into the market under the name "Standard," and Hughes made complaint to Pearson and Gill, who wrote:

"If you will take the proper and ordinary course open to you, viz., stop the sale of these goods by using the legal powers you possess, you will then find you will have no further trouble."

Also March 5, 1896:

"We would suggest that your proper course is to take legal proceedings. * * * You may find that, as the patent stands in our name, it will be necessary, as a matter of legal form, to use our name in any legal process."

In short, down to March 18, 1904, when Mason Pearson died and was succeeded by his son, Mason Pearson, Jr., and even later, the right of Hughes to the trade-mark "Ideal" was not questioned, but plainly recognized. The American patent expired December 21, 1903, and Hughes applied for his trade-mark "Ideal," as stated, in June, 1905, for the purpose of protecting himself in his rights to this trade-mark "Ideal" as applied to hair brushes. Hughes notified Pearson of this action on his part, and sent him a copy of the certificate of registration. He also sent notices of this registration to all ports of entry and to the trade, and sent a copy of such notice to Pearson.

After the registry of the trade-mark Hughes went to England and an agreement was entered into as follows:

"Messrs. Mason Pearson, Royal Victor Place, Old Ford Rd., London, E.

"August 4th, 1906.

"We, the undersigned, manufacturers of brushes, parties of the first part, viz., Mrs. Mary Pearson and Mason Pearson, her son, joint owners of their factory, situated at Royal Victor Place, Old Ford Rd., and Henry L. Hughes, party of the second part, of the city of Chicago, Ill., U. S. A., party of the second part, do hereby covenant and agree with the said Henry L. Hughes, of the second part, to grant to him the exclusive right to sell the following brushes of our manufacture in the United States and Canada, viz.: The brushes known as the Ideal hair brush (single bristle); also one known as Hughes' Improved Ideal hair brush (double bristle); also a military hair brush (double and single bristles)—for a period of twenty years (20 years) from this date. If the said Henry L. Hughes should die during, or prior to, the expiration of this contract, the trade-mark of the Ideal hair brush shall become the property of the said Mary Pearson and Mason Pearson, her son, jointly, or their assignee. The above contract is a transferable franchise on either side. Either party to this contract, wishing to sell, shall give the first option of purchase to the other party. Should any difficulty arise as to the value of the purchase, the matter shall be referred to arbitration. .

"Mary Pearson.
"Mason Pearson.
"Henry L. Hughes.

"Witness:
"Fred R. L. Rand,
"Clerk U. S. Consulate General, London, England."

This was duly acknowledged. Since that time Hughes has continued to purchase the brushes of Pearson. In or about April, 1910, Hughes found that hair brushes were being sold in this country in violation of his trade-mark rights. He took steps to stop this and succeeded. Pearson kept raising prices, and Hughes complained, and finally the Pearsons wrote:

"If you want us to free you from your contract, which prevents you from buying from any one else, we are perfectly willing to do so, on condition that you allow us to sell in the United States *under another name*," etc.

Thereupon Hughes refused to pay the increased prices and their relations ceased. It was a fair acceptance of the proposition of Pearson to end the contract, then having 16 years to run, with the understanding that Pearson might sell in the United States under another name than "Ideal." This letter was a recognition of Hughes' right to the trade-mark as applied to these brushes. Hughes, of course, has the right to make and sell these brushes, the patent having expired, or to purchase them of any manufacturer and sell.

After this the Pearsons appointed the defendant, Alfred H. Smith Company, their sole agents for the United States for Ideal hair brushes, and defendant has continued to sell these brushes, using the trade-mark "Ideal." Hughes had built up a large trade in "Ideal hair brushes," and this use of the trade-mark by defendant had seriously injured such business.

The evidence in this case shows clearly that neither Hughes nor either of his predecessors was an agent of the Pearsons and their predecessors; that the adoption of the trade-mark "Ideal" as connected with these brushes was not for the benefit of or in the interest of the Pearsons and their predecessors, but of Reid, Hurd, and Shorediche in the first instance, and of their successors in this business. It was not a name given to a patented article by the patentees or manufacturers, and by which it became known, but a name or trade-mark adopted by the predecessors of Hughes to designate and identify the particular hair brushes of a certain grade sold and dealt in by them. The affixing of this trade-mark in England by the manufacturers was done at the request of Reid and his associates and their successors, and was understood to be for the identification of the brushes made for and sold to Reid and his associates, to be sold or dealt in by them in this country. It was used and was to be used to identify the brushes purchased and sold by them, and not the brushes made by the manufacturers, Raper, Pearson, and Gill, and later by their successors, and finally by the Pearsons. If the Pearsons and their predecessors put this trade-mark "Ideal" on brushes of this grade, made and sold by them generally in Europe, or even in the United States, they were using the said designation improperly and in defiance and violation of the rights of Hughes and his predecessors.

After Mary Pearson and Mason Pearson had deliberately and with knowledge of its contents signed and executed the agreement of August 4, 1906, in which the right and ownership of the trade-mark in Henry L. Hughes is expressly recognized, and in which it is expressly provided that should Hughes die during or prior to the expiration of

such contract, which was to run 20 years, that *then "the trade-mark of the Ideal hair brush shall become the property of the said Mary Pearson and Mason Pearson* jointly, or their assignee—an admission that it was not their trade-mark, but the trade-mark of Hughes, and after this litigation commenced said Mary Pearson, who was the wife of Mason Pearson, Sr., gave some testimony tending to show that Mason Pearson, her husband, and Mr. Reid agreed on the name Ideal for the brush before Mr. Reid left for the United States, and before there was any arrangement for the sale of these brushes in the United States. This is not only contradictory of her own written admission, but is inconsistent with the conceded facts in the case. The brushes had not been introduced into the United States, and no arrangement made for Reid or any one to sell them in the United States. It is improbable that Pearson would suggest a *new name* for them in the United States before any arrangement for their introduction into and sale in the United States. Defendant contends that the written agreement of August 4, 1906, was procured by fraud, misrepresentation, and coercion. There is no evidence to sustain this contention. The agreement was voluntarily and understandingly entered into and executed.

The defendant presents four alleged defenses, and I quote the language of its counsel:

"First. That the word 'Ideal' is descriptive of the quality and character of the goods, and therefore not properly the subject of trade-mark monopoly.

"Second. That assuming that the word 'Ideal' is sufficiently arbitrary to be the subject-matter of a trade-mark, that the same became publici juris on the expiration of the patents covering said 'Ideal' brush, and that, therefore, it is incapable of monopoly as a trade-mark.

"Third. That if peradventure the court should hold that the word is subject-matter of trade-mark monopoly, and that it did not become publici juris on the expiration of the patent, that then it follows, from the facts disclosed concerning the relation of the parties, that the said good will and trade-mark arising as the result of the sale of brushes under this name 'Ideal' belongs to Mason Pearson Bros. and none other, and that, therefore, Mason Pearson Bros. have a right to manufacture and sell said brushes to the defendant (Smith) under said trade-mark.

"Fourth. That assuming that the word 'Ideal' is descriptive, and therefore not susceptible of trade-mark monopoly, or assuming that it has become publici juris as stated, defendants (Smith) contend that said word has in the United States acquired a secondary meaning, and that it now indicates to the purchasing public goods manufactured by Mason Pearson Bros. and none other, and that it would be a fraud on the purchasing public and a trespass on the rights of the said manufacturers to permit the use of the same in connection with the sale of brushes of the same class manufactured by another."

[1] Just how or wherein the word "Ideal" is *descriptive* of this or any hair brush or thing I am unable to understand. "Ideal" (Century Dictionary) means, as an adjective:

"I, a, Of or pertaining to or consisting in ideas; 2, Existing only in idea; confined to thought or imagination; 3, In philosophy, regarding ideas as the only real entities; pertaining to or in the nature of idealism; 4, Arising from ideas or conceptions; based upon one ideal or ideals; manifesting or embodying imagination; imaginative, as the ideal school in art or literature; an ideal statue or portrait.

"II, n, 1, That which exists only in idea; a conception that exceeds reality: 2, An imaginary object or individual in which an idea is conceived to be completely realized; hence a standard or model of perfection; as the ideal of beauty, virtue, etc.; 3, A standard of desire; an ultimate object or aim: a mental conception of what is most desirable, as one's ideal of enjoyment, one's ideals are seldom attained."

In Standard Paint Co. v. Trinidad Asph. Co., 220 U. S. 446, 31 Sup. Ct. 456, 55 L. Ed. 536, the question was whether "Ruberoid," as applied to a roofing material, was a valid trade-mark. The roofing material to whcih it was applied was in some respects like rubber, although it contained no rubber. "Rubberoid" means "like rubber." It is a trade-name for an "imitation of hard rubber; a compound word, rubber, and suffix, oid, meaning having the form or resemblance of the thing indicated, like," etc. Applied to the roofing material in question, it was truly descriptive of the thing, which was like rubber, and any one had the right to use the word and apply it to anything in fact like rubber. The court held that it was descriptive, and that the fact the word was misspelled was immaterial, and hence such word was not the subject of a valid trade-mark.

In Waterman et al. v. Shipman et al., 130 N. Y. 301, 29 N. E. 111, the Court of Appeals held that the word "Ideal" as applied to a fountain pen, in association with the words "Waterman's Fountain Pen," so the trade-mark read "Waterman's Ideal Fountain Pen," was a valid trade-mark. The court said:

"While the word 'fountain' as applied to pens of a certain kind is a common appellative, the word 'ideal' as applied to fountain pens is nondescriptive, arbitrary, and fanciful, and has no natural nor necessary application to a pen."

This case was approved in Cooke & Cobb Co. v. Miller, 169 N. Y. 475, 478, 62 N. E. 582, 583. When the word is generic, or descriptive of the article, its qualities, ingredients, grade, or characteristics, it is not the subject of a valid trade-mark. Waterman v. Shipman, supra; Selchow v. Baker, 93 N. Y. 59, 45 Am. Rep. 169; Cooke & Cobb Co. v. Miller, 169 N. Y. 475, 62 N. E. 582; Gilman v. Hunnewell, 122 Mass. 139; Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 11 Sup. Ct. 396, 34 L. Ed. 997. The word "Ideal" has no application to hair brushes, except as we arbitrarily apply it, and the word is in no sense indicative or descriptive of the qualities or characteristics or merits of the brush, except that it meets the very highest ideal, mental conception, of what a hair brush should be.

In Standard Paint Co. v. Trinidad Asphalt Co., 220 U. S. 446, 31 Sup. Ct. 456, 55 L. Ed. 536, the court reiterated the rule declared in Elgin Nat. Watch Co. v. Ill. Watch Co., 179 U. S. 665, 21 Sup. Ct. 270, 45 L. Ed. 365, that:

"No sign or form of words can be appropriated as a valid trade-mark which, from the *nature of the fact* conveyed by its primary meaning, others may employ with equal right for the same purpose."

The nature of the fact conveyed by the primary meaning of the word "Ruberoid" is that the roofing material is "like rubber." Here the primary meaning of the word "Ideal" as an adjective is:

"1, Of or pertaining to or consisting of ideas; 2, Existing only in idea, confined to thought or imagination."

And as a noun:

"1, That which exists only in idea, a conception that exceeds reality; 2, An imaginary object or individual in which an idea is conceived to be completely recognized; hence a standard or model of perfection; 3, A standard of desire, an ultimate object or aim, a mental conception of what is most desirable."

Hence the nature of *the fact* conveyed by the primary meaning of the word "Ideal" is that there is an "imaginary object" existing in "thought" or "ideas only," something that "exceeds reality," etc. This in no sense *describes* an existing thing, such as a hair brush. In Cooke & Cobb Co. v. Miller, 169 N. Y. 475, 477, 62 N. E. 582, 583, the words, "The Improved Favorite Letter and Invoice File, Best, Cheapest," was held not a valid trade-mark; the word "Favorite" being the one relied on. The defendant used the words "Favorite Letter and Invoice File." "Favorite" means:

"Regarded with particular liking, favor, esteem, or preference."

This word does not describe any particular characteristic, quality, or ingredient, but does indicate, in a way, a grade of invoice files, viz., that grade regarded with particular favor and preferred by users. The Court of Appeals held that this word "Favorite," used in connection with the other descriptive adjectives, was used in a descriptive sense and as a descriptive word, and held:

"A word in common use cannot be adopted and appropriated as a trademark, unless applied to the article designated thereby in a nondescriptive, arbitrary, and fanciful way, having no natural or necessary application to the article in question," etc.

The word "Favorite" in that case was not so used. In this case the word "Ideal," stamped on the article and on the labels on the boxes containing the brushes, may fairly be said to have been used in a "nondescriptive, arbitrary, and fanciful way," and in no way as a descriptive word. Of course, if the word is in its very nature and in its ordinary and primary meaning descriptive of the thing to which applied, it cannot be a lawful trade-mark in connection with such article.

[2] This brings us to the consideration of the question whether Reid and his associates, being mere purchasers and sellers in this country of these brushes, sole dealers in the United States, could adopt a trade-mark for the brushes so purchased and dealt in by them, and be the sole owners of same, transmitting title to their successors, inasmuch as Pearson, Raper, and Gill and their successors were sole manufacturers in England, and had the right to sell and did sell the same brush—not bearing the word "Ideal" however—in the rest of the world. Of this there can be little doubt, I think. The term "trademark," as defined by the Supreme Court of the United States in Elgin Nat. Watch Co. v. Illinois Watch Co., 179 U. S. 665, 673, 21 Sup. Ct. 270, 273 (45 L. Ed. 365), "generally speaking, means a distinctive mark of authenticity, through which the products of particular manufacturers *or the vendable commodities of particular merchants* may

be distinguished from those of others." This definition is quoted and approved in Standard Paint Co. v. Trinidad Asphalt Co., 220 U. S. 446, at page 453, 31 Sup. Ct. 456, at page 457 (55 L. Ed. 536). This has been said in many cases. Godillot v. Harris, 81 N. Y. 267; Derringer v. Plate, 29 Cal. 292, 87 Am. Dec. 170; Columbia Mill Co. v. Alcorn, 150 U. S. 460, 14 Sup. Ct. 151, 37 L. Ed. 1144; Holt v. Menendez (C. C.) 23 Fed. 869, affirmed 128 U. S. 514, 9 Sup. Ct. 143, 32 L. Ed. 526; Selchow v. Baker, 93 N. Y. 59, 45 Am. Rep. 169; Walton v. Crowley, 3 Blatchf. 440, Fed. Cas. No. 17,133; Amoskeag Mfg. Co. v. Trainer, 101 U. S. 51, 56, 25 L. Ed. 993. In Selchow v. Baker, supra, the court said:

"A party may be entitled to a trade-mark in a name which he uses arbitrarily either on articles which he manufactures or has manufactured for him."

As there must be a manufacturer before the merchandise passes to the hands of merchants for sale, and as a trade-mark may be adopted by a particular merchant to designate and distinguish the particular goods owned and sold by him, the trade-mark adopted here by Reid and his associates designated, *not the brush* as a patented brush or the manufacturer, but the particular brush sold by Reid and his successors; not the manufacturer or the origin of the brush, but the merchant who owned, sold, or dealt in those particular brushes in the United States. And it was not the name given to a patented brush to designate it from others not patented. The manufacturer in England put on this mark to distinguish the particular brushes the title of which was transferred to Reid and his associates, well knowing that such mark was to designate those so sold and no others, and was to indicate to the purchasers and users of those brushes so marked that they came from Reid and his associates, not as the manufacturers, but as owners and dealers merely.

" 'The meaning and use of a trade-mark is that some person dealing in goods, no matter of what kind, whether of his own manufacture or not, having a certain defined shape, if he stamps upon them some indication that that particular article is his, and his only, may thereby acquire so far an exclusive right to it as that no man may imitate his mark, and the legal right goes no further than that.' Ford v. Foster, L. R. 7 Ch. App. 611, note, 27 L. T. N. S. 219, 20 W. R. 311, 41 L. J. Ch. 682."

[3] It is urged by defendant that on the expiration of the United States patent in 1903, or possibly on the expiration of the British patent in 1899, the trade-mark, assuming its validity and that it was the property of Reid and his successors, became publici juris. Hopkins on Trade-Marks (2d Ed.) § 39, p. 78, is quoted, viz.:

"The general rule as to the name applied to a patented article during the life of the patent is that upon the expiration of the patent the public acquires the right to make, use, and sell the patented article, and to distinguish it by the name which it bore during the life of the patent."

Singer v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118, and the cases therein referred to, are cited as authority. But *this* patented hair brush never bore the name "Ideal" as its generic name during the life of the patent. It was not the name by which it was known, except as to one variety thereof sold in the United States

and Canada, and was not there applied to it by the patentees. It was not used or applied to designate *the brush,* that particular style or make of brush, but as the trade-mark of the merchant who dealt in and sold it in the United States and Canada, and solely to indicate the firm or persons who dealt in or sold it, the origin of sale. This is not an attempt by Reid and his associates, or their successor in right, to perpetuate a monopoly in this brush after the expiration of the patent. Hughes is not the patentee or the successor of the patentees. Hughes and his predecessors built up a business of great value in selling these brushes, and protected that business by the adoption and use of this trade-mark. It never belonged to the defendants or their predecessors. Pearson has acquired no right by the expiration of the patent to take and use Hughes' trade-mark. The expiration of the patent conferred no right on Pearson to do what he could not have done before; no right to put Hughes' trade-mark on brushes and put them on the market himself, thus indicating that they came from Hughes. It is true, however, that during the life of the patent all these brushes of this style sold in the United States were patented and marked "Patented," as well as with the name "Ideal." Throughout the United States this particular style of the patented brush was known as "Ideal." Hughes and his predecessors sold other brushes, made under this patent, not marked "Ideal." When this brush was freed of the monopoly by the expiration of the patent, every one in the United States became entitled to make and sell it. Can they mark and label it as they please, or can Hughes, who still deals in this particular brush, retain his title and exclusive use of his trade-mark to protect his trade and business, to indicate now, what he did before, that brushes of this style which bear the name "Ideal" come from him? It appears from the evidence that after as well as before the expiration of the patent this brush was sold under various names, "Very Brush," the "Perfect Penetrator," the "Cleanwell," the "Standard," the "London Patent," and "Pearson's Hair Brush."

It may be said that when a person, by contract with the patentee under United States letters patent, who is the sole manufacturer of the patented thing, obtains the sole right to sell such article in the United States, and adopts a trade-mark which he uses on and in connection with a certain grade or style of the patented article, and such grade or style becomes known to the trade and users by that name and no other, he takes his chances, and must expect that the right to the name will expire with the patent; that otherwise he would obtain a monopoly of that particular thing after the expiration of the patent; that this is subject to the same objections that obtain against the patentee who adopts a name for the patented thing which becomes generic. Is not this so, even where the trade-mark was adopted and used to designate the seller merely, origin of sale, and not the origin or manufacturer, and not the thing patented, but is applied to a class or style only of the patented article, and then not universally, but in our country only. In Singer Manufacturing Co. v. June Mfg. Co., 163 U. S. 169, 199, 16 Sup. Ct. 1002, 1014 (41 L. Ed. 118), Mr. Justice White, who delivered the opinion of the court, said:

"The result, then, of the American, the English, and the French doctrine universally upheld is this: That where, during the life of the monopoly created by a patent, a name, whether it be arbitrary or be that of the inventor, has become, by his consent, either express or tacit, the identifying and generic name of the thing patented, this name passes to the public with the cessation of the monopoly which the patent created. Where another avails himself of this public dedication to make the machine and use the generic designation, he can do so in all forms, with the fullest liberty, by affixing such name to the machines, by referring to it in advertisements, and by other means, subject, however, to the condition that the name must be so used as not to deprive others of their rights, or to deceive the public, and therefore, that the name must be accompanied with such indications that the thing manufactured is the work of the one making it as will unmistakably inform the public of that fact."

The question is not free from difficulty, and the answer is not free from doubt. It cannot be questioned that this style or form of this patented brush patented under the United States laws became known throughout the United States as "Ideal," or "Ideal Brush," and as the brush sold by Hughes and his predecessors. Hughes and his predecessors so intended, and it was done by and with the consent of the patentees, from whom solely Hughes derived his exclusive right to sell the brush in the United States and Canada.

Mr. Justice White quoted and approved Pouillet, Brevets d'Invention, § 329, p. 280:

"In principle, a surname is inalienable, and each one keeps the imprescriptible ownership in it. We know, however, that when the name of the inventor has become the designation of the thing patented, it belongs to every one, at the expiration of the patent, to make use of this designation."

May we not well inquire, if this be so, that is, if the name of the inventor applied to the patented thing belongs to every one when the patent expires, how it is that the arbitrary name applied to the patented thing *by the one having the sole and exclusive right to sell it* in the country where patented, and by which name it becomes known there, does not pass to the general public with the expiration of the patent? The only answer I can find is that after the expiration of the patent, as well as before, the Pearsons were the sole manufacturers, and as such they could and did make a contract with Hughes, giving him the sole right to sell that article, no longer protected by the patent, in the United States. As such sole dealer in that article, he had the right to adopt a trade-mark, and did continue and register the name "Ideal," which had been *his* trade-mark for years. But could he then adopt and register as his trade-mark, connected with this particular style of brush, now freed from the patent, the name which designated it in the United States before the patent expired? Had not that name "Ideal," connected with this style of brush, become public property to the extent that it could no longer be appropriated as a trade-mark by any one in connection with the particular brush? Having the sole right to sell throughout the United States, Hughes and his predecessors attached this name to the article, and throughout the United States it became known by that name. Hughes is responsible for that. So long as the patent was in force, it was unnecessary to register the name "Ideal" as a trade-mark, as the patent was protection against sales of that brush in the United States by others, wheth-

er or 'not it bore that name. But when the patent ceased to be a protection against sales by others of that article the name was registered as a trade-mark; the idea being to exclude others from selling that particular brush with that name thereon, and so create the impression that Hughes sold the only real "Ideal Hair Brush."

But it is said that the Pearsons recognized the trade-mark as valid and assented to its registry, and therefore cannot use it. Does that validate the trade-mark, if invalid without such recognition and assent? Clearly not. Does that mere assent and recognition estop the Pearsons to use it? I think not. But it is said the Pearsons gave Hughes a 20-year agreement for the exclusive sale of such brush made by him in the United States, and Hughes agreed to purchase all his brushes of the Pearsons, and in consideration of being released it was agreed that the Pearsons might sell these brushes in the United States under some other name; that is, Hughes surrendered his right to the exclusive sale of these brushes in the United States, provided and on condition the Pearsons would sell the brush under some other name, if they sold at all, in the United States. Can the Pearsons be enjoined from violating this agreement? There is no full, complete, and adequate remedy at law clearly. And to enforce it at law an innumerable number of suits at law will be necessary.

Again, the complainants contend that Hughes had the right to register this trade-mark under the Trade-Mark Act of February 20, 1905 (33 Stat. 724, c. 592 [U. S. Comp. St. Supp. 1911, p. 1459]), as Hughes had exclusively used this trade-mark "Ideal" for the period of 10 years next preceding the passage of that act. That act superseded Act March 3, 1881, c. 138, 21 Stat. 502 (U. S. Comp. St. 1901, p. 3401), and in section 5, after providing what marks, etc., may be registered and what may not be, states as follows:

"And provided further, that nothing herein shall prevent the registration of any mark used by the applicant or his predecessors, or by those from whom title to the mark is derived, in commerce with foreign nations or among the several states, or with Indian tribes, which was in actual and exclusive use as a trade-mark of the applicant or his predecessors from whom he derived title, for ten years next preceding" the passage of this act.

The meaning and effect of this proviso has been adjudicated by the Circuit Court of Appeals in this (the Second) circuit. Thaddeus Davids Co. v. Davids, 178 Fed. 801, 102 C. C. A. 249. It is there held in substance and effect that under the quoted 10-year clause any word or mark actually and exclusively used as a trade-mark of the applicant or of his predecessors from whom he derived title for 10 years next preceding the passage of the act, February 20, 1905, is entitled to registration and protection as a trade-mark notwithstanding the exceptions and prohibitions in the preceding clauses of the section. The question there was over the validity of the registration of the name "Davids." Section 5 of the said act of February 20, 1905, provides, among other things:

"Provided that no mark which consists merely in the name of an individual, firm, * * * shall be registered under the terms of this act."

Here was a clause absolutely prohibiting the registration of the name "Davids," but for the 10-year clause quoted above. The court

started off with the declaration that this word "Davids" was not a valid common-law trade-mark, and could not have been registered under the prior law, the act of March 3, 1881. Also:

"If, then, the name has validity as a registered trade-mark it is by virtue of the provisions of section 5 of Trade-Mark Act Feb. 20, 1905, * * * and the 10-year clause thereof upon which the complainant relies follows. * * * The act makes a mark actually and exclusively used the requisite period entitled to registration as a trade-mark. And if it is entitled to registration it is entitled to protection. We are unable to appreciate the distinction sought to be drawn by the defendant between the right to register a trade-mark and the right to protect it. * * * In our opinion, an interpretation of the act which renders the 10-year clause of no practical effect should be avoided, unless absolutely necessary. Undoubtedly public policy would prevent the registration as trade-marks of marks consisting of immoral or scandalous matter, or of flags or coats of arms. It may well be that the same principle would prevent the registration of trade-marks simulating those used by others. But with respect to names, descriptive words, and geographical terms, we are of the opinion that the proviso prevents their registration if they have been in use for less than 10 years, but that the 10-year clause entitles them to registration if they have been actually and exclusively used for more than that period before the passage of the act."

The Circuit Court of Appeals in the Davids Case refers to In re Cahn, Belt & Co., 27 App. D. C. 173, where it was explicitly held and decided that the proviso quoted does not permit or authorize the registration of marks or names the registration of which is prohibited by the prior clauses of section 5, and after stating that the court had so held in that case declared its inability to follow that case, as no practical effect could be given to the 10-year clause if the statute were so construed, and then held, as already quoted:

"But with respect to names, descriptive words, and geographical terms, we are of the opinion that the proviso prevents their registration *if they have been in use for less than 10 years,* but that the 10-year clause *entitles them to registration if they have been actually and exclusively used for more than that period before the passage of the act.*"

Here the name "Ideal" had been used by Hughes and his predecessors in title for more than the 10 years next preceding the passage of the act *actually and exclusively as his trade-mark.* It was a trade-mark of the applicant, and there is no statute, or clause in the statute referred to, forbidding its registration. Clearly the expiration of the patent in 1903 had no greater potency to prevent the registration of this trade-mark by Hughes, and its protection as such by the courts, than does the express provisions of the statute referred to to prevent the registration of "marks consisting merely in the name of an individual firm * * * or merely in words or devices which are descriptive of the goods with which they are used," etc., and which statute says such marks, words, etc., shall not be registered. This word "Ideal," under the facts and circumstances of this case, was entitled to registration, and, being entitled to registration by Hughes, is entitled to protection. Thaddeus Davids Co. v. Davids, supra, 178 Fed. 804, 102 C. C. A. 252, where the court held:

"And if it is entitled to registration it is entitled to protection."

As interpreted by the Circuit Court of Appeals, the 10-year clause referred to provided for the registration of every mark and word

which for the 10 years next· preceding the passage of the act had been in actual and exclusive use by the applicant and his predecessors in title as a trade-mark. The court also held that in such cases public policy, not the statute, would prevent the registration of marks consisting of immoral or scandalous matter, or of flags or coats of arms, even had they been in use as such for the 10-year period.

As to the cross-bill, it must be dismissed in any event as unauthorized. By section 22 of the Trade-Mark Act a suit in equity may be instituted whenever there are "interfering registered trade-marks," etc. Whenever a person deems himself injured by the registration of a trade-mark, by section 13 of the act he may apply to the Commissioner of Patents to cancel same. This is a complete and adequate remedy.

The cross-bill· will be dismissed, and the complainants will have ·a decree as prayed, with costs.