## CHARLES EMERSON *vs.* BENJAMIN F. BADGER.

Charles Emerson, a maker of razor straps which bore a label stating that they were made by "Charles Emerson, Emerson Place," taught his business to his five nephews. After his death, intestate, they continued the business in different places, and one of them, of the same name as the uncle, carried it on at Emerson Place and used a label precisely similar to that formerly used by the uncle. *Held*, that it was no infringement of this nephew's rights for the son of another nephew to use a label on the similar straps which he manufactured, stating that he was the son of a successor of the "original Charles Emerson, Emerson Place."

BILL IN EQUITY to restrain the use on the labels of razor straps sold by the defendant of the words "Genuine Emerson's Elastic Razor Strap," or of the name of the plaintiff, or of the plaintiff's place of business. The case was submitted to the court on the following agreed facts :

Charles Emerson of Charlestown began in 1810 to manufacture and sell a particular kind of razor strap, then and since known as " Emerson's Elastic Razor Strap," of which he was the inventor and original manufacturer, and from 1827 until his death in 1835, he carried on the business at Emerson Place in Charlestown. He placed upon the outer cases of straps, manufactured by him, labels, of which he was the original owner and designer. Copies are printed in the margin.*

Charles Emerson took into his employ and instructed in his business five of his nephews of the names and at the times following, to wit: Benjamin Badger in 1817, John Badger in 1818, Charles Emerson, 2d, in 1826, Joseph Emerson in 1827, and Elias Emerson in 1829. Benjamin Badger and John Badger continued in the employ of their uncle until 1826 and 1827 respectively; Joseph Emerson, until a short time before his death in 1835; and Charles Emerson, 2d, and Elias Emerson were in his employ at the time of his death.

When in 1826 and 1827 Benjamin and John Badger left the employ of their uncle, they began, and thereafter until his death continued, to manufacture and sell the straps, each on his own

---

\* The label on one side of the case was this :

DIRECTIONS FOR USING EMERSON'S ELASTIC RAZOR STRAP.
[Here were given directions.]
☞ MADE AND WARRANTED BY CHARLES EMERSON, EMERSON PLACE, CHARLESTOWN, (*Mass.*)

On the other side was this label :

CAUTION. The first genuine EMERSON'S RAZOR STRAP was made in the year 1810. From that time, the celebrity of the Strap continued to increase, till, in 1828, it was in so high repute, that other persons, wishing to avail themselves of its reputation, endeavored to counterfeit them, by making Straps of a similar form, and clandestinely putting on the name of *Emerson.* These Straps by their similitude to mine deceived the public, and by their worthless character injured the reputation of the genuine Strap. Among the multitude of imitations, one Strap has been seen with the forged name of " Charles Emerson, Emerson Place, Charlestown, Mass." I, therefore, hereby offer a reward of $100, to any person who will furnish sufficient evidence to identify the forger, in a court of justice. The public are hereby informed, that no Straps, bearing the name of EMERSON, are the original, genuine Emerson's Strap, but those having on the label, "Made and warranted by Charles Emerson, Emerson Place, Charlestown, Mass."

account and at a different place from the other; carried on their business at Charlestown, but not at Emerson Place, and used upon their straps the labels of their uncle. This they did with his consent and permission. When Joseph Emerson left his uncle he went into the employ of John Badger, but re-mained there only a short time and not after his uncle's death.

Charles Emerson, the uncle, died leaving no issue, and making no disposition, by will or otherwise, of his business and stock in trade or of any of his estate, real or personal. All of the said nephews were among his heirs at law, and Benjamin Badger was administrator of his estate. He owned at the time of his death, besides other property, the tools used in his business, some labels, and the plates from which the labels were printed, a small stock in trade, and the lot of land on Emerson Place with the dwelling-house and shop thereon, where he had carried on his business. The tools and stock in trade were purchased from his administrator, and divided among the five nephews, and the lot with the dwelling-house and shop on Emerson Place was purchased in 1836, from the heirs at law, by his said nephew, Charles Emerson, the plaintiff in this case, for the purpose of continuing and carrying on the business there, but there was no expression of such purpose in the deed or otherwise. No con-veyance of the business or good will of the business of Charles Emerson, deceased, was made by his administrator or any other person, otherwise than as aforesaid.

After the death of their uncle the five nephews continued to carry on the business, each on his own account; the plaintiff at Emerson Place, and the other four nephews at other and dif-ferent places in Charlestown. The plaintiff was the only one of the nephews who ever carried on the business on his own account at Emerson Place.

Before and after the death of the uncle, certain parties in Reading and elsewhere, having no right or pretence of right to manufacture the straps, began to make them, imitating the labels of the inventor and selling the straps under the name of " Emerson's Elastic Razor Strap."

For two or three years after the death of their uncle, the neph-

ews continued to use his labels unchanged, including not only the stock on hand at his death, but new ones, struck off by common consent from the same plates. His customers were divided among four of the nephews, John Badger, Joseph Emerson, Elias Emerson and Charles Emerson, (Benjamin Badger not sharing in the division, but preferring to keep to himself the customers whom he had already acquired in his separate business, rather than to have all the customers divided,) by agreement, made soon after the uncle's ·death, but no agreement was made between the nephews as to the use of the labels, and no license or permission was given by either to the others therefor, except as aforesaid. The plaintiff, by advertisement and circulars, addressed to the public after the uncle's death, claimed and gave notice that he alone had the right to use on his labels the words " Emerson " and " Emerson Place " as on the original label ; and Benjamin Badger and the others, by advertisement and otherwise, denied that the plaintiff had such exclusive right, and claimed an equal right in all the nephews.

The plaintiff never intended to waive any of his rights, either such as he had at his uncle's death or subsequently acquired.

The defendant was the son of Benjamin Badger, and was employed and instructed by his father in his lifetime in the business ;.and after his father's death continued to carry on the business on Elm Street in Charlestown, and used labels, copies of which are printed in the margin.*

---

* The label on one side of the case was this :

DIRECTIONS FOR USING THE GENUINE EMERSON'S ELASTIC RAZOR STRAP.

[Here were given the same directions as on the original label.]

☞ Made and warranted by BENJAMIN F. BADGER, SON AND SUCCESSOR OF THE LATE BENJAMIN BADGER, No. 51 Elm Street, who was Senior Successor to the Original CHARLES EMERSON, EMERSON PLACE, CHARLESTOWN, (*Mass.*)

On the other side was this label :

CAUTION. In the year 1810, Mr. CHARLES EMERSON began to make the Straps since known by the name of " *Emerson's Elastic Razor Strap*." In August, 1835, Mr. Emerson died, leaving the business equally to five of his nephews, all of whom he had taught and employed, and who began to work for

The plaintiff, since the death of his uncle, used the labels **of** his uncle unchanged.

The straps made by the plaintiff and the defendant were of the same kind as those of their uncle, the original inventor, in all essential respects.

*D. H. Mason & S. Z. Bowman,* for the plaintiff.

*J. B. Thayer,* for the defendant, was stopped by the court.

GRAY, J. The original inventor of the razor straps mentioned in the bill, and the owner and designer of the label put upon them by way of trade mark, was Charles Emerson, Senior, who employed and instructed in his business five of his nephews, of whom Benjamin Badger, the father of this defendant, was the eldest, and the plaintiff was the third. Said Benjamin, in his uncle's lifetime, left his employment, and continued, with his consent and permission; but on his own account, to manufacture and sell such straps and to use the same label thereon, and was succeeded in his business by his son, the defendant. The uncle died without issue, his nephews were among his heirs at law, and his business and trade mark were not disposed of by himself by will or otherwise, nor by his administrator after his decease. The plaintiff, though bearing the same name, is not the original Charles Emerson, and has no greater right than the defendant to hold himself out as such, or to use the label of his uncle. The label used by the defendant does not represent his razor straps to be made by the plaintiff or by any person of the name of Charles Emerson, but states with exact truth the rela-

---

him in the following order : — In 1817, Benjamin Badger ; in 1818, John Badger ; in 1826, Charles Emerson, 2d ; in 1827, Joseph Emerson ; and in 1829, Elias Emerson. Benjamin Badger and John Badger continued in his employ till 1826 and '7, when they made them on their own account ; and, by his consent, still retained on the label the name of Charles Emerson, to identify the strap. In October 1855, Benjamin Badger died, and was succeeded in busi- ness by his son, Benjamin F. Badger. In 1828, the celebrity of "Emerson's Strap" induced sundry persons to counterfeit them ; and, by assuming the *false* name of Emerson, to palm them upon the public as genuine. Information is therefore given, that none are genuine but those having on the label the name of one of the above-mentioned persons.

*Charlestown, Nov.* 24, 1855.

tion of the defendant to the original inventor and owner. The plaintiff therefore fails to prove either any infringement of his own rights or any wrongful act of the defendant.

*Bill dismissed, with costs.*