## LEVY et al. v. WAITT et al.

### (Circuit Court, D. Massachusetts. July 10, 1893.)

### No. 2,829.

TRADE-MARKS — CIGARS — NAME ORIGINATED BY MERCHANT—RIGHT OF MANUFACTURER.

Two classes of labels are recognized by cigar manufacturers, "factory brands" and "customers' brands." The latter are originated by a customer, and used only on goods manufactured for him. A cigar merchant ordered a lot of cigars, of a certain size and quality, under the name

"Blackstone," which he originated. This order the manufacturer filled, but the cigars were not taken by the merchant, and were sold to other parties. *Held*, that the manufacturer acquired no right to use the word "Blackstone" as a trade-mark.

In Equity. Bill by Armand Levy and others against Henry Waitt and others to restrain respondents from infringement of complainants' trade-mark. Bill dismissed.

George L. Huntress and Morris S. Wise, for complainants.
Payson E. Tucker and George C. Abbott, for defendants.

COLT, Circuit Judge. This bill in equity seeks to restrain the defendants from the use of the name "Blackstone" as a brand for cigars. The evidence discloses that the plaintiffs first manufactured a lot of 5,100 cigars, branded "Blackstone," in February, 1878, and shipped them to A. R. Mitchell & Co., of Boston, who were their selling agents in the eastern states. The name "Blackstone," as applied to a brand of cigars, seems to have been first suggested by B. S. Thompson, a jobber in coffee, tea, and tobacco. Thompson's place of business was on Blackstone street, in the city of Boston; and on February 7, 1878, he ordered, through G. R. Seward, a salesman of the firm of A. R. Mitchell & Co., 5,000 cigars under this name. This order was as follows: "5 M. cigars ¼ in. longe '(longer)' than Bulls same quality as Bears under Brand of 'Blackstone' at $28.50, for B. S. Thompson." Thompson swears that he suggested the name "Blackstone" to Seward, that he took it from the name of the street where his place of business was situated, and that all private brands of cigars he sold were suggested by him. This positive evidence as to the origin of the word "Blackstone" is not met by the plaintiffs' testimony. The evidence of Armand Levy, one of the plaintiffs, and of J. L. Richards, a member of the firm of A. R. Mitchell & Co., upon this point, is indefinite and unsatisfactory.

There are other circumstances which tend to show that the plaintiffs did not originate and did not intend to adopt this name as a trade-mark in 1878. The plaintiffs formerly kept a book containing their labels, and in recent years they have kept another book, having a collection of their lithographed labels, but in neither of these books is this label found. As to the omission of this label from the latter book, it is said that it has never been lithographed. Up to the time the trade-mark law was declared unconstitutional, —November 18, 1879, (U. S. v. Steffens, 100 U. S. 82,)—the plaintiffs were accustomed to register their labels in the patent office. It is admitted that there was no registration of this trade-mark. The plaintiffs were members of the Protective Association of Cigar Manufacturers of the city of New York. This company had a book for the registration of all trade-marks which belonged to its members, but it does not appear that the name "Blackstone" was ever recorded with the association. Again, the 5,000 cigars made for Thompson, and the 100 additional, for samples, sent with the order, were the only cigars of this brand manufactured by the

plaintiffs between February, 1878, and May, 1884, when a second lot of 5,000 was shipped to Mitchell & Co. This last lot was ordered by W. G. Cook, of Woonsocket, R. I., where cigars of this brand had been made for several years previously by A. P. Holley & Son. With the exception of a third lot of 5,000, made in June, 1884, and sent to Mitchell & Co., these comprise all the Blackstone cigars manufactured by the plaintiffs until 1889, when the defendants had already built up a large trade in cigars so branded. I am of opinion that the plaintiffs did not originate the word "Blackstone," and that they did not intend to adopt it as a trade-mark in 1878, when they made the first lot for Thompson, and that whether they intended to so adopt it in 1884 or 1889 becomes immaterial, in view of the fact, which is not denied, that as early as 1881 this name was used upon a brand of cigars by A. P. Holley & Son, of Woonsocket, R. I., whose place of business was on the Blackstone river.

It is true that, for some reason, Thompson did not take the cigars which the plaintiffs shipped to Mitchell & Co. upon his order, and that they were sold to other parties. While this might be urged as a reason to prove that Thompson did not complete his right to claim this name as his trade-mark, because he never used it upon an article sold by him, I do not see that this circumstance tends to establish the plaintiffs' exclusive right to its use. If Thompson had accepted these cigars, and offered them for sale in his business, he would have become the owner of the trade-mark. The plaintiffs acquired no title to this mark by reason of being the manufacturers of the article. A dealer may originate and hold a trade-mark indicating that the goods are sold by him, whoever may manufacture them. Menendez v. Holt, 128 U. S. 514, 9 Sup. Ct. Rep. 143. Two classes of labels are recognized by cigar manufacturers,—"factory brands" and "customers' brands." The latter are those originated by a customer, and are used only on his goods. The manufacturer cannot rightfully claim any property in these brands. The circumstance to which the plaintiffs attach importance upon the question of adoption of this mark, that 100 samples of cigars were sent with the Thompson order, is not sufficient, of itself, to overcome the other circumstances already referred to. I do not think the plaintiffs intended to adopt this name as their trade-mark in 1878. They did not originate the name, and they took no steps to indicate that they intended to claim it as a trademark. The plaintiffs having failed to prove that they originated, and first adopted, the word "Blackstone," as a trade-mark, the bill must be dismissed, with costs, and it is so ordered.

Bill dismissed, with costs.