## SILVERMAN v. UNITED STATES.
### No. 2685.

Circuit Court of Appeals, First Circuit.
June 27, 1932.

BINGHAM, Circuit Judge, dissenting.

William H. Lewis, of Boston, Mass. (Matthew L. McGrath, of Boston, Mass., on the brief), for appellant.

Elihu D. Stone, Asst. U. S. Atty., of Boston, Mass. (Frederick H. Tarr, U. S. Atty., of Boston, Mass., on the brief), for the United States.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

Two indictments were found against the appellant: One under section 1 of the Harrison Anti-Narcotic Act (26 USCA § 692), and the other under section 1 of the Jones-Miller Act (21 USCA § 174). The two indictments were consolidated at the trial under section 1024, R. S. (18 USCA § 557), and the appellant was found guilty under both indictments.

The first indictment alleged that the appellant on or about September 18, 1931, "did wilfully, knowingly and unlawfully sell, dispense and distribute to one Benjamin Fox of Boston a compound, manufacture, salt, derivative and preparation of opium, to wit, two ounces, more or less, of morphine, said morphine not being sold, dispensed and distributed in or from an original stamped package."

The second indictment alleged that the appellant "unlawfully, wilfully, fraudulently and knowingly received and concealed certain narcotic drugs, to wit, two ounces, more or less, of morphine, said morphine having been theretofore fraudulently and knowingly imported and brought into the United States at a time and place within said United States * * she, the said Rebecca Silverman, at all the times aforesaid well knowing said morphine to have been so imported as aforesaid."

Numerous exceptions were taken to the rulings of the trial judge, which were preserved in seventeen assignments of error.

The first two assignments relate to the consolidation of the two indictments and denial of a motion to compel the government to elect on which indictments it would proceed. The charges in both indictments grew out of one transaction, and, apart from section 1024, R. S., the trial of the two indictments together was a matter within the discretion of the trial judge. There was clearly no abuse of this discretion in this case. Pointer v. United States, 151 U. S. 396, 14 S. Ct. 410, 38 L. Ed. 208; Wallace v. United States (C. C. A.) 243 F. 300; Lucas v. United States (C. C. A.) 275 F. 405.

Under the third assignment, counsel contends that the appellant was placed in double jeopardy by being tried on both indictments. The contention is without merit. Even the same act may constitute two separate offenses, especially if the offenses are created under separate statutes. The test laid down in numerous cases is whether an additional fact or facts must be proven in one case than in the other. Gavieres v. United States, 220 U. S. 338, 31 S. Ct. 421, 55 L. Ed. 489; Charley Toy et al. v. United States (C. C. A.) 266 F. 326; Vamvas v. United States (C. C. A.) 13 F.(2d) 347; Parmagini v. United States (C. C. A.) 42 F.(2d) 721, 724; Blockburger v. United States, 284 U. S. 299, 52 S. Ct. 180, 76 L. Ed. 306; Yee Hem v. United States, 268 U. S. 178, 45 S. Ct. 470, 69 L. Ed. 904; Copperthwaite v. United States (C. C. A.) 37 F.(2d) 846. Proof is required under the indictment for violation of section 1 of the Harrison Anti-Narcotic Act of a sale or distribution of opium, or its derivative salts, from unstamped packages; but, under the indictment for violation of section 1 of the Jones-Miller Act, only proof of the receipt and concealment of such narcotic drugs, knowing the same to have been unlawfully imported, is necessary. Obviously different facts must be proven under each indictment. That Congress has made possession of unstamped packages prima facie evidence of a sale and distribution from unstamped packages under the Harrison Anti-Narcotic Act, and also provided under the Jones-Miller Act that possession, unexplained, of such drug, in whatever form, shall be sufficient evidence of the receipt of such drug, knowing it was unlawfully imported, does not make the offenses charged in these indictments the same, nor, on conviction on both counts, involve

the punishment of the respondent twice for the same act.

Under the first count, there was oral evidence of actual sale and distribution in unstamped packages, and the punishment under that count was not for having possession, but for the sale and distribution. Upon the issue of double punishment under these acts, the distinction between the act constituting the offense and evidence of the act must be kept in mind.

■ The fourth, fifth, sixth, seventh, and eighth assignments are without merit. The fourth relates to a statement made by counsel for the government in opening. It does not appear that the statement was necessarily improper, People v. Wong Hing, 176 Cal. 699, 703, 169 P. 357, or that any prejudice resulted therefrom. There was some evidence offered tending to sustain the statement, sufficient, at least, to rescue the charge from a deliberate attempt to prejudice the jury.

The record does not disclose that the alleged errors set forth in the fifth, sixth, seventh, and eighth assignments were prejudicial. Only the merest skeleton of the evidence objected to under these assignments is presented to this court. Unconnected with what went before or followed, it has little bearing that can be deemed prejudicial to the appellant.

■ The ninth assignment relates to the admission in evidence of the two packages seized and containing morphine. It was clearly admissible under the stipulated facts filed by the government supplementing the record.

The tenth and eleventh assignments relate to the admission of testimony in cross-examination as to the appellant's bank accounts, and the introduction by the government of the records of two banks showing her balances, withdrawals, and loans.

■ The appellant took the stand and gave an explanation of the transaction testified to by the officers, which was, in effect, a denial of the sale of any narcotic drug as alleged in the indictment, her explanation being that Fox had made an appointment to meet her to pay a debt which he had owed her for over a year for providing him with bail. It was in this manner she accounted for certain marked bills, found by the officers in her possession. In thus voluntarily offering herself as a witness, she exposed herself to cross-examination as to all matters connected with the sale of such drugs and to the impeachment

of her credibility as a witness. Wilson v. United States, 232 U. S. 563, 569, 34 S. Ct. 347, 58 L. Ed. 728; DeWitt v. Skinner (C. C. A.) 232 F. 443; Owl Creek Coal Co. v. Goleb (C. C. A.) 232 F. 445.

■ After her implied denial of a sale of any such drug, and her explanation of the marked money found in her possession following the transaction witnessed by the officers, in which there was paid to her $100 for two ounces of morphine, as the evidence tended to show, it was not improper in cross-examination to inquire of her as to her occupation, and her sources of income; and in view of her characterizing herself as a housewife, and accounting for her income by an allowance from her husband of one, two or three hundred dollars weekly—an allowance which must have seemed incredibly large to the average juryman for a family of four —the records of her bank deposits, withdrawals, and balances became pertinent, not only in rebuttal of her testimony as to her occupation and her sources of income, but, together with the other evidence in the case, it had some probative force as tending to show that she was engaged in the illicit traffic in narcotic drugs in which it is common knowledge that the profits are large, and that she was a known source of supply to addicts of this drug. To this extent it gave additional weight to the other evidence of a sale on September 18, 1931, to Fox. The sales of such narcotic drugs are not usually isolated instances, and the evidence disclosed that the appellant had been under surveillance for six months by the officers whose duty it was to enforce the acts for the suppression of the traffic.

She had three bank accounts, which disclosed the frequent receipts of considerable sums of money; her balance in one savings account at times exceeded $25,000, against which she borrowed large sums totalling at the time of the trial over $20,000. Her bank accounts also disclosed the use of large amounts for some purpose as evidenced by the withdrawals at times of large sums. The sums appearing in her several bank accounts as deposits could not be reasonably accounted for by any weekly allowance to her as a housewife by her husband, who had given up his business as an antique dealer seven months before the trial, following which there still appears to have been no diminution in her receipts, or in her financial transactions.

■ The presiding judge remarked in the course of the trial that the bank balances

were admitted "to contradict her statements that her husband had a little antique shop." From the meager record before this court, it is difficult to tell what the grounds were on which the court admitted this testimony; but it is quite obvious it was not admissible for the purpose suggested in the above remark. The government did not offer it for that purpose, nor contend that the husband had not been an antique dealer. What it did contend was that her income as shown by her bank books did not come from her husband as a weekly allowance, and that in connection with other evidence in the case the books were admissible in support of the charge of the alleged sale of narcotics to Fox.

Her bank accounts, of course, had no probative force on the question of whether her husband was an antique dealer, even if her statement as to the nature of her husband's business was rebuttable, since it was immaterial and was brought out in cross-examination; nor do we see how the jury could have given any weight to them on this question, which was not even in issue.

They were admissible, however, not in rebuttal of the statement that her husband was an antique dealer, or that she had not made deposits during the year, but as showing financial dealings inconsistent with her occupation as a housewife; and unexplained and in connection with the other evidence in the case furnished some ground on which the jury could find that she was engaged in the illicit traffic in narcotic drugs. Being admissible for this purpose, the evidence was not prejudicial because it was admitted on erroneous grounds, and on the record the verdict of the jury seems to have been fully warranted. Section 269, Judicial Code (28 USCA § 391); Ætna Indemnity Co. v. J. R. Crowe Coal & Mining Co. (C. C. A.) 154 F. 545, 559; Cook v. Foley (C. C. A.) 152 F. 41; State v. Wagner, 61 Me. 178, 194.

Then, too, the extent to which the government may go in a criminal case in the cross-examination of a respondent for the purpose of impeachment is largely a matter of discretion with the trial judge. We do not think there was a clear abuse of that discretion in this case. Portman v. United States (C. C. A.) 34 F.(2d) 406; Powers v. United States, 223 U. S. 303, 32 S. Ct. 281, 56 L. Ed. 448; Davis v. Coblens, 174 U. S. 719, 729, 19 S. Ct. 832, 43 L. Ed. 1147; Holsman v. United States (C. C. A.) 248 F. 193, 196; DeWitt v. Skinner (C. C. A.) 232 F. 443.

The twelfth and thirteenth assignments relate to the refusal to give requested instructions, viz.: that the government had not sustained the burden of proof; that there was no evidence that the packages seized were unstamped; and that in the second indictment the burden was on the government to show that the drug was imported into the United States, and there was no evidence to sustain the charge that the drug alleged to have been sold was imported.

The fourteenth assignment relates to an instruction by the judge as to the effect of a sale of such drugs from an unstamped package; the fifteenth assignment relates to an instruction that possession of any such drug was evidence that it was imported, and sufficient to sustain a conviction under the second indictment, unless the possession was satisfactorily explained.

The last four assignments ignore the effect given by Congress to the possession of such drugs, either in stamped or unstamped packages, and also to the evidence of a witness that the package seized bore no stamps, and are without merit. The requested instruction covered by the twelfth and thirteenth assignments was properly refused, and the fourteenth and fifteenth were in accordance with the provision of the statutes above quoted.

The sixteenth assignment relates to an instruction by the court to the jury as follows: "The court erred in instructing the jury as follows: 'The question is, as I say, one of fact: Do you believe the Government's witnesses? You saw them on the stand; do you believe them, or do you believe the defendant herself?' "

There is no prejudice or error shown here. It was entirely proper for the court to instruct the jury that the issue was one of fact, and to make the direct inquiries contained in the assignment.

The seventeenth assignment relates to a comment by the court on the calling as witnesses of the two young sons of the appellant. From the record, their testimony seemed unimportant, and the comment of the trial judge, who heard all the evidence, may have been warranted. At least, it is not shown to be sufficiently prejudicial alone to require a new trial.

The judgment of the District Court is affirmed.

BINGHAM, Circuit Judge, dissents.