## SOUTHEASTERN BREWING CO. v. BLACKWELL, Secretary of State of South Carolina, et al.*

### No. 3917.

Circuit Court of Appeals, Fourth Circuit.

Dec. 3, 1935.

John A. Sibley and Pope F. Brock, both of Atlanta, Ga. (Spalding, Mac-Dougald, Sibley & Brock, of Atlanta, Ga., and Herbert & Dial, R. Beverley Herbert, and George L. Dial, Jr., all of Columbia, S. C., on the brief), for appellant.

Paul B. Eaton, of Charlotte, N. C., and E. M. Land, of Statesville, N. C. (Land & Sowers, of Statesville, N. C., Benet, Shand & McGowan and William Shand, all of Columbia, S. C., and Neil S. Sowers, of Statesville, N. C., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is an appeal from a decree entered in the District Court of the United States for the Eastern District of South Carolina, in a suit in equity in which the appellant, herein referred to as the plaintiff, sought to enjoin the appellee, Old South Brewing Company, from using the name "Old South" in its brewery business and the appellee Blackwell, as secretary of state for South Carolina, from recording the legend "Old South Brew" as the property of the Old South Brewing Company.

After the taking of evidence and a hearing before the court below, the judge made a full and detailed finding of facts and stated his conclusions of law. A decree was entered dismissing the plaintiff's bill, holding the Old South Brewing Company to be the exclusive owner of the

*Certiorari denied 56 S. Ct. 591, 80 L. Ed. ——.

trade-mark "Old South Brew," and permanently enjoining the plaintiff from using the trade-mark "Old South Brew" in the states of Virginia, North Carolina, and South Carolina.

The facts as found by the judge below show that in the summer of the year 1933, Ralph Long and J. G. Isenhour, engaged in distributing several brands of beer in North Carolina, and in August, 1933, conceived the idea of erecting a brewery in North Carolina, and brought together a group of men whom they interested in the project. On September 1, 1933, they selected the name Old South Brewing Company, Inc., for the corporation to be organized, and adopted the name "Old South Brew" as a trade-mark for the product they proposed to manufacture. Until the brewery could be erected, Long and Isenhour arranged with the Eastern Beverage Corporation of Hammonton, N. J., to manufacture a beer for their account under the name of "Old South Brew," to be shipped to points in Virginia, North Carolina, and South Carolina. The shipment of this beer to customers of Long and Isenhour was begun in September, 1933, and various shipments were made to distributors selected by Long and Isenhour. This beer was sent out by the distributors to the retailers in the surrounding territory. These retailers were told that this same beer would eventually be made at the Statesville, N. C., plant of the Old South Brewing Company. These shipments by the Eastern Beverage Corporation continued until May 1, 1934, and no shipments were made by that corporation with the label "Old South Brew," except to the customers of Long and Isenhour.

In September, 1933, Long and Isenhour and their associates contracted to purchase a building in Statesville, N. C., to be used as a brewery, and in October, 1933, the Old South Brewing Company, Inc., was chartered by the state of North Carolina. On September 15, 1933, the Eastern Beverage Corporation transferred and assigned to Long and Isenhour its interests in the trade-mark "Old South Brew," and on October 12, 1933, Long and Isenhour assigned the same interest to the Old South Brewing Company, and that company contracted for and engaged the services of the same brewmaster who had brewed the beer at Hammonton, N. J.

A meeting of business men of Statesville was held on December 1, 1933, at which plans for the completion of the proposed brewery and the manufacture and sale of beer under the trade-mark "Old South Brew" were approved. One W. B. King, manager of the plaintiff's Statesville plant, was present at this meeting, and the plaintiff's president was in Statesville a few days thereafter. The newspapers of Statesville carried news items concerning the proposed project.

After Long and Isenhour adopted "Old South Brew" as a trade-mark for the product to be manufactured by the Old South Brewing Company, Inc., they visited beer distributors and retailers in North Carolina, Virginia, and South Carolina for the purposes of interesting them in the products of Old South Brewing Company, Inc., under the trade-mark "Old South Brew," and made arrangements with a number of distributors and retailers to handle the product as soon as it was put out by the brewery in Statesville. "Old South Brew" as a trade-mark for beer and ale to be handled by the Old South Brewing Company, Inc., was extensively advertised by Long and Isenhour in the three states. On the 23d day of March, 1934, Old South Brewing Company, Inc., sent out a letter to the wholesale and retail dealers and distributors of beer in North Carolina, its letterheads showing the trade-mark "Old South Brew," and stated its intention to manufacture the beer under that trademark. These letters were sent to plaintiff's distributors and branch managers at various points in North Carolina.

Up to the date of the trial, the Old South Brewing Company, Inc., had spent and contracted to spend a substantial amount of money in the establishment of its proposed brewery, and while there had been some delay, owing to financial difficulties, it was found by the judge below that the project had not been abandoned, but would be carried through. The Old South Brewing Company, Inc., filed its trade-mark "Old South Brew" and received certificates of registration in the following states and on the following dates: Virginia, July 11, 1934; North Carolina, July 25, 1934; Georgia, August 2, 1934; Florida, August 2, 1934; Tennessee, August 3, 1934; South Carolina, September 6, 1934. On June 20, 1934, the company filed its trade-mark "Old South Brew" in the United States Patent Office in Washington, class use since September 1, 1933.

The plaintiff is a corporation with its principal place of business in Chattanooga, Tenn., and was organized in August, 1933, and in April, 1934, began the actual brewing of ale and beer. The plaintiff selected the words "Old South," as a trademark for its products in April, 1934, but did not begin its use until June 11, 1934, when it shipped its product labeled "Old South" into Tennessee, Georgia, North Carolina, South Carolina, Virginia, Florida, and Alabama. On July 6, 1934, it filed the trade-mark "Old South," in the United States Patent Office in Washington, class use since June 8, 1934. Plaintiff was notified by counsel for the defendant, Old South Brewing Company, Inc., in a letter written July 3, 1934, that that company was the owner of the trademark, but the plaintiff continued to ship its product, into the territory mentioned, under the label "Old South." These shipments of the plaintiff also carried a neck label bearing the legend "Does not Contain More Than Ten Percent Alcohol" until 60 days before the trial in the court below when the use of this label was discontinued. Plaintiff analysed its own beer and ale and knew that the analysis for beer ran from 2.78 per cent. to 3.2 per cent. alcoholic content.

In North Carolina the parent company of the plaintiff maintains branch plants in a number of different towns, among them being Statesville, of which plant W. B. King was the manager. He had served in that capacity for a number of years prior to the year 1933. King attended the Statesville meeting at which the brewery project proposed by Long and Isenhour was discussed.

Two questions are involved: First, whether the words "Old South Brew" are capable of appropriation as a trade-mark or whether they are geographical and descriptive, and therefore not capable of such appropriation. Second, whether the defendant Old South Brewing Company, Inc., is the sole owner of the trade-mark "Old South" if the words are capable of appropriation as a trade-mark.

■ As to the first question, the judge below reached the conclusion that the words "Old South" or "Old South Brew," taken together, do not constitute a term that is geographical or descriptive in its meaning, but rather indicate a régime or period in history, and that therefore the term is capable of appropriation as a

trade-mark. In this conclusion we agree. In Reardon Laboratories, Inc., v. B. & B. Exterminators, Inc. (C.C.A.) 71 F.(2d) 515, will be found a discussion, by this court, of this question. There we held that while a mere descriptive mark or name could not be appropriated as a trademark to the exclusion of all others who wish to use the same words, yet, if the words are merely suggestive, and especially if they had acquired, by use, a secondary significance, they could be appropriated by the users to the exclusion of all others. A review of the authorities on this point will be found in that case. In Anheuser-Busch, Inc., v. Budweiser Malt Products Corporation (C.C.A.) 295 F. 306, it was held that the word "Budweiser" though geographical in origin, was nevertheless entitled to protection, because it had acquired a secondary meaning. Here the words "Old South Brew" had been used by the Old South Brewing Company, Inc., and its assignors Long and Isenhour to the extent that it had acquired a secondary significance in the territory in which they were operating. In Coca-Cola Company v. Koke Company of America, 254 U.S. 143, 41 S.Ct. 113, 65 L.Ed. 189, it was held that a secondary meaning of a trade-mark may be acquired by long use, so as to entitle it to protection in equity against infringement, whatever may have been the original weakness of such trade-mark. In Hamilton-Brown Shoe Company v. Wolf Brothers & Company, 240 U.S. 251, 36 S.Ct. 269, 60 L.Ed. 629, the Supreme Court upheld as a valid trade-mark the words "The American Girl," as applied to shoes.

On the second question we also concur in the conclusion reached by the judge below that the defendant Old South Brewing Company, Inc., is the sole owner of the trade-mark "Old South," and, as such, is entitled to the protection of a court of equity in its use in the territory mentioned; the states of Virginia, North Carolina, and South Carolina.

■ It is a well-settled principle that there can be no property in a trade-mark apart from a business or trade; that there is no such thing as property in a trademark of itself; and that it cannot be assigned in gross. It is contended on behalf of the plaintiff that Long and Isenhour had no such business as would give them property in the trade-mark "Old South." We do not wish in any way

to controvert this recognized principle but do not think it applies to the facts here proven.

Long and Isenhour conceived the idea of using the words "Old South" as a trade-mark designating a certain beer; they arranged with the Eastern Beverage Corporation to manufacture and ship the beer under that trade-mark pending the completion of their brewery plant at Statesville; they advertised that particular brand of beer and had it shipped on their order; the New Jersey brewery assigned to them all of its rights in the trade-mark, and they in turn assigned the rights to Old South Brewing Company, Inc., one of the defendants. The plaintiff must necessarily have known of the selection and use of the trade-mark, the shipment of the beer, and unquestionably knew of the proposed Statesville brewery for the manufacture and sale of beer under this trade-mark; the same brewmaster, that brewed the beer at the plant of the Eastern Beverage Corporation, was engaged to brew the same quality of beer at the proposed Statesville brewery. All these circumstances lead us to the conclusion that Old South Brewing Company, Inc., had acquired a property right in the trade-mark entitled to the protection of a court of equity. In American Steel Foundries v. Robertson, Commissioner et al., 269 U.S. 372, 46 S.Ct. 160, 162, 70 L.Ed. 317, Mr. Justice Sutherland said: "The general doctrine is that equity not only will enjoin the appropriation and use of a trade-mark or trade-name where it is completely identical with the name of the corporation, but will enjoin such appropriation and use where the resemblance is so close as to be likely to produce confusion as to such identity, to the injury of the corporation to which the name belongs."

It is well settled that one need not himself manufacture goods in order to acquire a valid mark. Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526; Levy v. Waitt (C.C.) 56 F. 1016; Alfred H. Smith Company v. Hughes (D.C.) 205 F. 302; Michigan Condensed Milk Company v. Kenneweg Company, 30 App.D.C. 491; Nelson v. J. H. Winchell & Co., 203 Mass. 75, 89 N.E. 180, 23 L.R.A.(N.S.) 1150; 63 C.J. 335, 336.

This has been held to be the case even though the name of the real manufacturer is used as a part of the de-vice. McLean v. Fleming, 96 U.S. 245, 24 L.Ed. 828; Walton v. Crowley, 3 Blatchf. 440, Fed.Cas. No. 17,133; Emerson v. Badger, 101 Mass. 82.

It has been held to be sufficient, as regards the claim of ownership in the trade-mark, that the goods are manufactured for the claimant or that they pass through his hands in the course of trade, and that he gives to them the benefits of his reputation or his name and business style. Nelson v. J. H. Winchell & Co., supra; Coca-Cola Company v. State of Texas (Tex.Civ.App.) 225 S.W. 791; Alfred H. Smith Company v. Hughes, supra; Chas. Broadway Rouss, Inc., v. Winchester Company (C.C.A.) 300 F. 706.

There is unquestionably some conflict of authorities on this latter point, but we are of the opinion, as stated above, that the circumstances here are such as to give the defendant, Old South Brewing Company, Inc., the right to the trademark in question.

The contention raised on behalf of the plaintiff that the trade-mark had been abandoned is not sustained by the evidence, and the judge below found against it.

"To establish abandonment of a trademark as a defense, it is essential to show, not only acts indicating a practical abandonment, but an intent to abandon." Wallace & Co. v. Repetti, Inc. (C.C.A.) 266 F. 307.

See, also, Nieman v. Plough Chemical Company (C.C.A.) 22 F.(2d) 73; U.S.C.A. title 15, chapter 3, § 85, pages 109–11; Gold Seal Associates, Inc., v. Gold Seal Associates, Inc. (D.C.) 56 F.(2d) 452; Saxlehner v. Eisner & Mendelson Company, 179 U.S. 19, 21 S.Ct. 7, 45 L.Ed. 60.

Acts indicating abandonment or the intent to abandon are not proven here.

The plaintiff deliberately adopted the trade-mark knowing of its prior use, and its conduct throughout the whole transaction is not such conduct as would make a strong appeal to the conscience of a chancellor.

The decree of the court below is affirmed.

SOPER, Circuit Judge (dissenting).

In United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 97, 39 S.Ct. 48, 50, 63 L.Ed. 141, it was held that

a trade-mark right is not a right in gross or at large, like a statutory copyright or a patent for an invention, to either of which, in truth, it has little or no analogy. The court·said: "There is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed. The law of trade-marks is but a part of the broader law of unfair competition; *the right to a particular mark grows out of its use, not its mere adoption;* its function is simply to designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his; and it is not the subject of property except in connection with an existing business. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 412–414, 36 S.Ct. 357, 60 L.Ed. 713." (Italics inserted.) See, also, American Steel Foundries v. Robertson, 269 U.S. 372, 380, 46 S.Ct. 160, 70 L.Ed. 317.

Long and Isenhour and Old South Brewing Company, Inc., the corporation which they formed, are attempting in this case to establish title to the name "Old South Brew," not through its *use* in connection with an existing business of their own, but through its mere *adoption* as a trade-mark to be hereafter used in a business which they hope and intend to found, but so far have not yet begun. The undisputed evidence is that during the period from September, 1933, to May, 1934, in which beer was sold as "Old South Brew" by the Eastern Beverage Corporation, they neither manufactured, bought, sold, or owned any beer; and these facts must be borne in mind in order not to misunderstand allusions in the statement of the case to the manufacture of beer for their account or the shipment of beer to their customers. They had in fact no beer business. They did persuade the Eastern Beverage Corporation to ship beer of its manufacture under the label "Old South Brew," and they did aid that company in securing customers; but the beer was marked with the name of the Eastern Beverage Corporation, and not with the names of Long and Isenhour (or the name of their corporation), and the buyers were the customers of the former corporation and not of the latter. At the outset they received two small payments for their services, but this practice was speedily abandoned be-

cause competition made the expense too great for the Eastern Beverage Corporation to stand, and thereafter they received no compensation whatsoever, and orders for the goods were sent directly from the distributors to the Beverage Corporation. Their only connection with an established as distinguished from a prospective business was in the character of salesmen serving for a brief period without pay. The helpful discussion of Judge Hough in Baldwin Co. v. R. S. Howard Co. (D.C.) 233 F. 439, affirmed (C.C.A.) 238 F. 154, demonstrates that a salesman does not acquire property in a trademark in this manner.

It is not contended that Long and Isenhour gained title to the trade-mark through the assignment from the Eastern Beverage Corporation made at the beginning of the period. The assignment amounted to nothing more than a declaration of nonownership on the part of the corporation, for a trade-mark cannot be assigned except in connection with an assignment of the business in which it has been used. It cannot be assigned in gross. Brown Chemical Co. v. Meyer, 139 U.S. 540, 11 S.Ct. 625, 35 L.Ed. 247; Belden v. Zophar Mills (C.C.A.) 34 F.(2d) 125.

It is suggested, however, that it is enough to support a claim of ownership in a trade-mark that the goods upon which it is used are manufactured for the claimant, or "that they pass through his hands in the course of trade and that he gives to them the benefit of his reputation and name or business style." This statement is true if the words are spoken of a claimant who has an established business; for example, it was shown in Nelson v. J. H. Winchell & Co., 203 Mass. 75, 82 89 N.E. 180, 23 L.R.A.(N.S.) 1150, from which the quotation is taken, that the goods were manufactured specially for the claimant and in accordance with his directions; that he himself was responsible to purchasers, dictated the stock to be used and the manner of manufacture, and went to the factory to see that his ideas were carried out. Something less than this will doubtless be sufficient, but at least the claimant must be so connected in a responsible capacity with the manufacture or distribution of the goods in an established business that the trademark may perform its legitimate function to designate the goods of a particular trader. In the pending case, the trade-

mark indicated the goods of Eastern Beverage Corporation; and the goods themselves did not pass through the hands of Long and Isenhour in any capacity whatsoever. It is noteworthy that in all of the cited cases in which the trademark was sustained as having been used in connection with a distributing business, the goods passed through the hands of the claimant as the owner thereof.

In June, 1934, after the shipment of Old South Brew by the Eastern Beverage Company had ceased, the Southeastern Brewing Company began to use the name on its product, although it knew from the public announcements of Long and Isenhour that they intended to use it in the business of the Old South Brewing Company, Inc., when its new brewery should be built; and it is suggested that such conduct should be condemned. With this suggestion there is complete accord; but every act of business cunning is not justiciable in the courts. The case should turn upon the inquiry whether the Old South Brewing Company, Inc., has gone far enough to gain an exclusive legal right which it is entitled to protect; and it is submitted that the effort and expense attendant upon the selection of the name and the advertisement of its intended use in a future business did not create a title that could be judicially enforced. Quite the contrary was held in Maxwell v. Hogg, L.R. 2 Ch. 307, in which the plaintiff conceived a name for a new magazine and incurred considerable expense in advertising it and in preparing for publication. Before publication the defendant, knowing of this, hastily brought out a magazine of his own under the same name. It was decided that prior to actual publication, the plaintiff acquired no property in the name, and hence could not restrain its use by his competitor. The court said (L.R. 2 Ch. 307, 311): "That expenditure upon a work not given to the world can create, as against the world, an exclusive right to carry on a work of this nature, seems to me a proposition quite incapable of being maintained. It never, so far as I am aware, has been thought that any such equity exists. Then, if the expenditure alone will not confer such a right, will the advertisements do so? Such an advertisement is nothing more than an announcement of an intention on the part of the plaintiff to publish in the month of October following a work under a given title. Can that be considered as constituting in him an equitable title, or any title, to the name under which that work is to be published? If it is to be considered as doing so, the consequence will be that, without having made any new publication at all, he might come to this court saying: 'I have advertised my intention to publish in October a given work under a given title, and nobody else shall publish a work under that title until I have had an opportunity of bringing my work before the public.' He does not by his advertisements come under any obligation to the public to publish the work, and therefore the effect of holding the advertisements to give him a title would be that, without having given any undertaking or done anything in favour of the public, he would be acquiring a right against every member of the public to prevent their doing that which he himself is under no obligation to do, and may never do."